**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Oscar LARA and Cavern City
Construction Company,
Defendants–Appellants.**

**Nos. 90–2176, 90–2177.**

United States Court of Appeals,
Tenth Circuit.

Feb. 13, 1992.

---

Ray Twohig, Albuquerque, N.M., for defendant-appellant Oscar Lara.

Jeffrey J. Buckels, Albuquerque, N.M., for defendant-appellant Cavern City Const. Co.

Robert J. Gorence, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Robert J. Baca and Joe M. Romero, Jr., Asst. U.S. Attys., with him on the brief), Albuquerque, N.M., for plaintiff-appellee U.S.

Before McKAY, Chief Judge, SETH, Circuit Judge, and BROWN, District Judge.*

* Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

WESLEY E. BROWN, District Judge.

The defendants Oscar Lara and Cavern City Construction, Inc., were convicted by a jury on four counts of making false statements to the United States (18 U.S.C. § 1001). In addition, Mr. Lara was convicted on one count of obstruction of justice (18 U.S.C. § 1510). The defendants were sentenced under the federal sentencing guidelines. On appeal, the defendants contend that the district court erred by admitting unduly prejudicial evidence into the trial and by incorrectly applying the sentencing guidelines. We affirm.

Cavern City Construction, Inc. ("Cavern City"), was a general contracting construction firm in the Carlsbad, New Mexico area. Mr. Lara was the president of Cavern City in 1988 when the firm was awarded two federally funded construction contracts. The contracts related to a Department of Energy project in Carlsbad known as the Waste Isolation Pilot Plant, or "WIPP." Westinghouse Corporation was the managing contractor for the project. The indictment below alleged that Mr. Lara received bids from his subcontractors on the WIPP project, that he altered the bids by inflating certain cost figures, and that, in turn, Mr. Lara submitted those falsified bids to Westinghouse. The indictment also alleged that Mr. Lara obstructed justice by offering payments to two of the subcontractors if they would say that they had authorized Lara to alter their bids.

Appellants first contend that the district court erred by admitting evidence that Mr. Lara was currently being prosecuted for an offense arising out of a construction project other than the WIPP project. According to appellants, evidence of this other prosecution should have been excluded under either Rule 404(b) or Rule 403 of the Federal Rules of Evidence. The government contends that the evidence was properly introduced because defense counsel "opened the door" on this subject in his direct examination of the defendant.

The evidence in question was brought out in the following manner. On direct examination, the defendant answered as follows to the questions put to him by his counsel:

Q. Does Cavern City Construction currently have any bonding?

A. Since the indictment in October, we lost it all.

[Tr. Vol. III at 950.]

* * * * * *

Q. Have you ever been arrested?

A. No, sir.

Q. Other than this case, have you ever been prosecuted for anything?

A. No.

Q. Were you ever involved in a civil lawsuit, prior to this suit with Mr. Brazeal and Mr. Jackson, arising out of the matters here?

A. No, sir.

[Tr. Vol. III at 951.]

On cross-examination, the government asked Mr. Lara if it were true that Cavern City had lost its bonding in part because of bidding practices on another project. Defense counsel objected to any reference to this other project, which had resulted in a separate indictment that was pending against Mr. Lara. In a discussion outside of the jury's hearing, the court stated that the impression left by the defendant's testimony was that the indictment in the instant case was the sole reason Cavern City had lost its bonding, when in fact it appeared that bidding practices at this other project may have been a factor as well. The court therefore allowed the government to inquire into the matter. The government asked the defendant if this other project were also a factor in the company losing its bonding. The defendant indicated that it was not a factor because the number of counts in the instant case had been sufficient to cause the bonding company to refuse bonding for Cavern City. The government sought to clarify this answer but defense counsel objected and the matter was not pursued further. (Later, in rebuttal, the government presented the testimony of an employee of the bonding company who stated that he had told the defendant

that the loss of bonding was due to both pending indictments.) The discussion then turned to whether the government could bring out the fact that Mr. Lara was facing prosecution on the other project. The district court held that this was proper impeachment in light of the fact that the defendant had stated that he had never been prosecuted for anything other than the instant case. The court stated, however, that the government could not go into the particulars of the allegations in the other case. The following took place on cross-examination:

Q. Mr. Lara, you testified on direct that this is the only federal prosecution that you have ever faced, is that correct?

A. Yes.

Q. And you testified that this is the only federal prosecution you are facing; is that correct?

A. Yes. I misunderstood the question, but, yes.

Q. Is it true, Mr. Lara, that you're currently being prosecuted federally elsewhere; is that correct?

A. Yes.

MR. TWOHIG: I object, Your Honor. It's totally untrue. It's not elsewhere. It's right here.

Q. Excuse me. You're currently being federally prosecuted on a separate matter?

A. Yes.

Q. Here in the District of New Mexico; is that correct?

A. Yes.

Q. And that prosecution is currently pending; is that true?

A. Yes.

Tr. Vol. III at 1127.

Appellants argue that the admission of this evidence was error. We find that the admission of the evidence was proper under both Rule 404(b) and Rule 403 of the Federal Rules of Evidence. Rule 404(b) generally prohibits the introduction of evidence of crimes or wrongs to prove the character of a person in order to show action in conformity therewith. Such evidence may be admissible for other pur-

poses, however. In this case the record is clear that the court allowed the evidence to be used to impeach the defendant's testimony. *Cf. United States v. Doran,* 882 F.2d 1511, 1524 (10th Cir.1989). This ruling was proper in light of the manner in which the issue was raised. The issue of other prosecutions *was first raised by defense counsel* during the defendant's direct examination. When the defendant was asked, "Other than this case, have you ever been prosecuted for anything?," the defendant responded, "No." The defendant's testimony could reasonably be taken as an assertion that the indictment in the instant case was the only trouble he had ever had with the law. This answer was misleading in light of the fact that the defendant was at the time under indictment in another case. Evidence of the other prosecution was not introduced to show the defendant's bad character. Rather, it was used to challenge the truthfulness of his testimony. Rule 404(b) shields a defendant from unfair prejudice but it is not a license to give misleading or false testimony. Under the circumstances, the use of this evidence for impeachment was a permissible "other purpose" under Rule 404(b). *Cf. United States v. Stockton,* 788 F.2d 210, 219 n. 15 (4th Cir.) (Impeachment may qualify as a permissible use of prior bad acts under Rule 404(b)), *cert. denied,* 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986).

Nor was the admission of this evidence an abuse of the court's discretion under Rule 403. A district court has broad discretion in determining whether the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403; *United States v. Martinez,* 938 F.2d 1078, 1082 (10th Cir. 1991). The district court's determination will not be disturbed absent an abuse of that discretion. *Martinez, supra.* The district court explained the decision to admit evidence of the other prosecution in this manner:

Let me state for the record that I felt that because of the question that was asked on direct examination of Mr. Lara by his counsel, that the jury was unfairly left with the impression that this case is the only time Mr. Lara has ever been charged with criminal offenses or prosecuted. I think that was the direct question and the direct response. That was not the truth.

After extensive conferences with counsel at the bench and, also, after having conducted the voir dire of Mr. Lara, I thought we ended up with an arrangement that brought out, for the jury, the truth of the situation, yet with as little impact on Mr. Lara as possible, and I still am convinced that that was the appropriate way of doing it.

(Appellee's Br. at 11–12 (citing Tr. at 1178)). Similarly, the court concluded that the defendant's answer to the question about Cavern City's bonding "paint[ed] an unfair picture to the jury." These assessments were certainly within the judge's discretion under Rule 403. *See United States v. Keys,* 899 F.2d 983, 987 (10th Cir.1990) (Decision under Rule 403 is particularly suited to the trial judge because of his familiarity with the evidence.) The use of this evidence to impeach the defendant's testimony was not "unfair prejudice" in light of the defendant's testimony on direct exam. Moreover, the district court took steps to minimize any possible prejudice by limiting the scope of the impeachment. Finally, we see no indication that the district court refused to give a limiting instruction on the permissible inferences arising from this evidence.[1] We therefore conclude that the district court did not abuse its discretion.

■ Appellants next contend that the district court erred in its application of the sentencing guidelines. In particular, appellants object to the district court's calculation of the appropriate offense level under U.S.S.G. § 2F1.1. The court arrived at an adjusted offense level of twelve based in

---

1. The record excerpts provided to us do not indicate whether the defendant requested a limiting instruction. *See* Fed.R.Evid. 105 (When evidence which is admissible for one purpose but not for another purpose is admitted, the court *upon request* shall restrict the evidence to its proper scope and instruct the jury accordingly.)

part on a determination that the loss to the government from the offense conduct was $20,969.85. This latter figure was the difference between the unaltered bids from Cavern City's subcontractors and the falsified bids submitted by Mr. Lara. Appellants contend that the government suffered no monetary loss from the defendant's alteration of the subtier bids because the actual value of the construction services provided to the government was equal to or greater than the bid quotations submitted by Mr. Lara. The district court rejected this argument and specifically found the amount of the loss to be the difference between the true and the altered bids.

■ The question of what factors the guidelines direct the court to consider in computing the amount of a loss is a legal question that we review *de novo*. *United States v. Whitehead*, 912 F.2d 448, 451 (10th Cir.1990); *United States v. Westmoreland*, 911 F.2d 398, 399 (10th Cir. 1990). "In construing the term loss we are deciding whether the district court correctly computed the loss attributable to [the] Defendant's criminal activities." *United States v. Johnson*, 941 F.2d 1102, 1114 (10th Cir.1991). In this case, we find that the district court's approach to determining the amount of the loss was proper. Sections 2F1.1 and 2B1.1 of the guidelines and the accompanying notes make clear that "loss" is not simply intended to be a measure of the net monetary damage to the victim. Its purpose is to gauge the severity of a particular offense. *Cf. United States v. Westmoreland*, 911 F.2d 398, 399 (10th Cir.1990) (In determining the amount of "loss" from a theft, the fact that the police recovered the stolen property should not affect the determination of the extent of defendant's culpability and responsibility for sentencing.) The basic definition of "loss" is the value of the property taken, damaged, or destroyed. U.S.S.G. § 2B1.1, comment. (n. 2). The term applies to cases where the conduct is only partially completed. Thus, the "loss" from the theft of a government check will be the face amount of the check regardless of whether or not it is cashed. *Id.* Similarly, the loss resulting from the theft of a car will be its market value even if the car is immediately recovered. *Id.* We think similar reasoning would apply to the offense of wilfully making false statements. It should be noted that the Commission apparently intended the severity of a crime involving false statements to be measured by the "loss" associated with the crime inasmuch as the penalty for 18 U.S.C. § 1001 is determined under U.S.S.G. § 2F1.1.

In the instant case the defendant altered subtier bid quotes from his subcontractors by increasing the amount of the bids. He did so without authorization. He then submitted a bid to Westinghouse that included the altered subtier bids. Through the use of these false statements, the defendant obtained payment in excess of what he would have received if Westinghouse had known the true amount of the subtier bids submitted by the subcontractors. He obtained $20,969.85 in payments over what he was entitled to. We find this to be a "taking" of property as that term is used in the guidelines. *See United States v. Johnson*, 941 F.2d 1102, 1114 (10th Cir.1991) (Where the defendant induced another to transfer rental property to him by means of false representations, the rental property was "taken" and the value of the property was included in the "loss" under U.S.S.G. § 2B1.1, notwithstanding the fact that the government was able to reacquire the property through foreclosure). Under these circumstances, it was entirely consistent with the guidelines for the court to use the difference between the true and the altered subtier bids to determine the "loss." Here, unlike *United States v. Smith*, 951 F.2d 1164 (10th Cir.1991), the defendant intended to receive $20,969.85 more than he was entitled to absent the altered subtier bids. The fact that the government may have received services with a value equal to Cavern City's bid does not alter the fact that the defendant obtained the payment for that bid through the use of false statements. *Cf. United States v. Whitehead*, 912 F.2d 448, 452 (10th Cir.1990) ("Loss" was determined based on the value of the property the defendant obtained through the use of a false social security number).

The district correctly determined the amount of the loss from the offense conduct and the sentences imposed by the court were proper.

The judgment of the district court is AFFIRMED.