UNITED STATES of America, Plaintiff–
Appellee and Cross–Appellant,

v.

Jerry SANTIAGO, Defendant–Appellant
and Cross–Appellee.

Nos. 90–2180, 90–2199.

United States Court of Appeals,
Tenth Circuit.

Oct. 13, 1992.

Rehearing Denied Jan. 26, 1993.

ed from. Accordingly this disposition in no way disturbs the default judgment.

Robert J. Gorence, Asst. U.S. Atty., William L. Lutz, U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff-appellee and cross-appellant.

William D. Fry, Asst. Federal Public Defender, Las Cruces, N.M., for defendant-appellant and cross-appellee.

Before LOGAN and BRORBY, Circuit Judges, and CARRIGAN, District Judge.[1]

CARRIGAN, District Judge.

Defendant Jerry Santiago appeals his conviction and sentence for one count of mail fraud in violation of 18 U.S.C. § 1341. He argues that the prosecutor's comments during closing argument were so prejudicial as to require a new trial. He further asserts that his exclusion from the district judge's *ex parte* examination of a juror violated his right to be present at all stages of the trial. In addition, both parties appeal aspects of the district court's sentencing decisions.

## I. BACKGROUND.

In 1989, Santiago was a United States Customs Service enforcement officer in New Mexico who handled dogs used to interdict drug smuggling at the Mexican border. The dogs were kept at a shelter in Deming, New Mexico. Santiago was acquainted with a dog shelter employee, Phillip Finley, who at times worked as a Customs Service informant. The evidence at trial established that, after several conversations with Finley, Santiago agreed to a scheme in which Finley would take and

---

1. Honorable Jim R. Carrigan, United States District Judge for the District of Colorado, sitting by designation.

destroy Santiago's car, a Suzuki Samurai, and Santiago would report to the police and his insurance company that it had been stolen.

Finley informed the Customs Service of the scheme. On June 18, 1989, Santiago delivered the car to Finley. That exchange was witnessed by a Customs Service investigator who thereafter took possession of the car.

The next day Santiago reported to the police that his car had been stolen. On July 10, 1989, he mailed to his insurer, State Farm Insurance Company (State Farm), an affidavit claiming $11,000 for his "stolen" car.[2] Because the Customs Service had informed State Farm of Santiago's scheme, no insurance money was ever paid. The Samurai's "blue book" value was $4,800 which constituted the highest amount State Farm would have paid under its policy.

At trial Santiago admitted that he had attempted to defraud his insurance company, but asserted the defense of entrapment. He was convicted by a jury, and was sentenced to thirty-six months probation.

## II. PROSECUTORIAL MISCONDUCT.

■ Santiago argues that the prosecutor made several improper comments during his closing argument that justify reversing his conviction. This court will overturn a jury verdict based on a prosecutor's comments if they "were enough to influence the jury to render a conviction on grounds beyond the admissible evidence presented." *United States v. Dickey*, 736 F.2d 571, 596 (10th Cir.1984). We conclude that the prosecutor's remarks in the instant case did not rise to that level.

Santiago first contends that the following excerpt from the prosecution's closing argument demonstrates that the prosecutor was improperly vouching for his case:

PROSECUTOR: "I want to close in a second and I just want to touch on one thing. It's something that the defendant said while he was on the stand. And it struck me as more than ironic. He said when he went to Wallace Chevrolet and saw that red Camaro, it was fate. 'They had the color I wanted. I wanted this brand new car. It was fate.'

Well, fate doesn't make someone a criminal. You don't do criminal actions because of fate. You do them because of your own free will and volition. In this country, or anywhere, things don't just happen. You have a choice. You have a choice to do something right or do something wrong.

In this case the defendant decided he wanted that car and despite being charged to uphold the law, he was going to commit a fraud to do it. He staged the theft and it was very clear it was his choice and it wasn't fate.

He's trying to avoid responsibility for that action whether he calls it fate now or tries to blame it on Mr. Finley. 'It's still not my responsibility that all this stuff took place. Even though I know what the law is, given my prior background in law enforcement.'

DEFENSE COUNSEL: 'I object to that comment. It's vouching for his own argument.'

THE COURT: 'Excuse me. Go ahead with your argument.'" (Tr. Vol. IV, p. 371–72).

The trial judge instructed the jury that "any statements, objections or arguments made by the lawyers are not evidence in the case.... What the lawyers say is not binding on you." (Jury Instruction No. 7, Doc. 31).

Because Santiago objected to this claimed misconduct, we first determine whether the conduct was, in fact, improper. *United States v. Ellzey*, 936 F.2d 492, 498 (10th Cir.1991) (quoting *United States v. Lonedog*, 929 F.2d 568, 572 (10th Cir.1991),

---

**2.** That $11,000 amount was used during sentencing. On appeal, Santiago asserts that he had specified $11,000 as the car's value in an affidavit to the police, but had only claimed $9,000 in the affidavit he filed with State Farm. The affidavits were not made part of the record on appeal, however, and we therefore must accept the district court's conclusion that Santiago filed an $11,000 insurance claim. *See* Tr. Vol. II, p. 8.

*cert. denied,* —— U.S. ——, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991)). If we hold that it constituted prosecutorial misconduct, we must determine whether it warrants reversal. *Id.* Prosecutorial misconduct:

> "does not warrant reversal if it was harmless error.... 'A non-constitutional error is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect.' ... In determining whether the misconduct affected the outcome, we consider: 'the curative acts of the district court, the extent of the misconduct and the role of the misconduct within the case as a whole.'" *Lonedog,* 929 F.2d at 572 (citations omitted).

In our view the quoted remarks of the prosecutor were not improper. Indeed it is difficult to see how the questioned comments could be characterized as prosecutorial "vouching" for the evidence. The comments were not unreasonable in light of the evidence, and even if they had been improper, their effect would have been negated by the court's instruction that a lawyer's argument is not evidence upon which a conviction may be based. Absent evidence to the contrary, it is presumed that juries follow the trial court's instructions. *See Lonedog,* 929 F.2d at 576.

Because Santiago did not object to the other statements that allegedly constituted prosecutorial misconduct, we may reverse based on those comments only if they resulted in plain error. *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *Lonedog,* 929 F.2d at 570. "Plain error is *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.'" *Lonedog,* 929 F.2d at 570 (emphasis in original).

The first closing argument statement asserted to be plain error was:

> "After you've prosecuted cases, there is a saying that if the law is not on your side you argue the facts. If the facts aren't on your side you argue the law ... If neither the law nor the facts are on your side, the only thing left is to point the finger at the Government and see if you can make someone else look worse than you are and perhaps someone will buy that.
>
> And I submit that that's exactly how in this case the defense is because you've got a guy like Mr. Finley. If you make him bad enough you can shift your attention away from what he did as a law enforcement officer." (Tr. Vol. IV, p. 371.)

Santiago challenges this statement, arguing that by denigrating the entrapment defense, the prosecutor implied his personal belief that the defendant was guilty and that the defendant's counsel believed his client was guilty.

Because the defendant admitted that he had attempted to defraud his insurance company, the primary issue at trial was whether, as he maintained, he had been entrapped. While the prosecutor's isolated comment on his personal experience may not have been relevant, we conclude that it did not constitute plain error. That statement alone did not imply that by choosing to assert the defense of entrapment, defense counsel had indicated his belief that his client was guilty. Moreover, by referring to the affidavits Santiago had submitted to the police and his insurance company, in which he had claimed that his car had been stolen, the prosecutor properly responded to the defense raised by emphasizing Santiago's voluntary participation in the crime.

Finally, Santiago challenges the prosecutor's comments in rebuttal argument,[3]

---

3. On rebuttal, the prosecutor argued, in pertinent part, as follows:

> "Is there anything in those tapes that says he is doing this against his will and it's all Mr. Finley's idea and he's being bamboozled to commit a crime? A guy that had an elevated duty to uphold the law. The guy that, based

on his law enforcement background, knows these things about entrapment and what the law is....

Again, what it gets back to is an attempt by a person sworn to uphold the law to place it off on someone else and to avoid the responsibility for his own actions....

claiming that the comments misconstrued the law regarding the entrapment defense and the burden of proving it. We perceive no error. Read in context, we find those statements consistent with the district court's entrapment defense instructions whose legal accuracy is not here attacked. The prosecutor's references to Santiago's former status as a law enforcement officer did not misstate the law or burden of proof, but rather were fair comments on the evidence produced at trial.

## III. EXCLUSION OF DEFENDANT FROM THE TRIAL COURT'S *EX PARTE* INTERVIEW OF JUROR.

During defense counsel's closing argument, a juror became ill and had to be excused. Santiago initially objected to using the only alternate juror because during *voir dire* she allegedly had heard another prospective juror comment that the entrapment defense was ridiculous. Based on his concern that counsel's presence during an examination of the juror could be counterproductive,[4] the district judge denied Santiago's attorney's request to *voir dire* the alternate juror, but allowed the parties an opportunity to submit proposed questions.

The district judge then questioned the alternate juror on the record in his chambers outside the presence of the defendant and the attorneys. After satisfying himself that the juror could render an unbiased verdict, the judge allowed the juror to leave his chambers, invited the attorneys into chambers and had the court reporter read back to them his examination of the juror. Santiago's attorney then stated:

"Your Honor, I'm inclined to say that the matter is resolved. However, I would ask—my client is aware of the situation and it's going to be my advice to him, frankly, that we should let it go, but I would like an opportunity to discuss it with him.
JUDGE: Oh, sure. Take a few minutes. . . .
COUNSEL: We're satisfied, Judge."
(Tr. Vol. IV, p. 409).

On this appeal, Santiago argues that his exclusion from the trial judge's *ex parte* interview of the juror violated his rights under the Constitution and Fed.R.Crim.P. 43 to be present at all stages of the trial.

■ We first must determine the appropriate standard of review. We agree with the parties that whether a defendant has a right to be present at a particular stage of his or her trial is a legal issue subject to *de novo* review. *See Larson v. Tansy*, 911 F.2d 392, 394 (10th Cir.1990). Santiago maintains that, because he sufficiently objected to the procedure the district court used to interview the juror, our review whether any error was harmless also is plenary. His only objection at trial, however, was unrelated to the issue here appealed, and we do not equate counsel's denied request to be present during the examination as a contemporaneous objection to the procedure the trial court invoked or as an objection to his client's exclusion while the juror was questioned. *See United States v. McDonald*, 933 F.2d 1519, 1524 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991) (denial of motion for mistrial based on trial judge's *ex parte* contact with juror not equivalent to contemporaneous objection; plain error review applicable). We therefore review for plain error only.[5] Howev-

---

**4.** The district judge stated:

"I'll conduct [the interview] with the juror. I'm not willing to subject jurors to attorney cross-examination. I think that's not appropriate at all. That's not a juror's function, to be called in here and cross-examined by lawyers." Tr. Vol. IV, p. 383.

**5.** An alleged deprivation of a defendant's right under Fed.R.Crim.P. 43 to be present during trial proceedings ordinarily is subject to the harmless error rule and will not constitute reversible error absent a showing of clear prejudice to the absent defendant. *See, e.g., United States v. Baca*, 494 F.2d 424, 428 (10th Cir.1974); *United States v. Freed*, 460 F.2d 75, 78 (10th Cir.1972); *United States v. Jorgenson*, 451 F.2d 516, 521 (10th Cir.1971). Absent a contempora-

Mr. Finley is not the kind of guy you could be swept away with, especially a law enforcement officer. . . . And the question still is, given all that, did that man do something that he didn't want to do because, basically Finley persuaded him against his good judgment as a law enforcement officer? I submit that he didn't, and that's preposterous." Tr. Vol. IV, p. 400–404.

er, we apply the plain error rule less rigidly when reviewing potential constitutional error. *United States v. Jefferson,* 925 F.2d 1242, 1254 (10th Cir.1991).

█ To a large extent, a defendant's constitutional right to be present at trial proceedings is rooted in the Confrontation Clause of the Sixth Amendment. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (citing *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)). In proceedings not involving confrontation of witnesses or evidence offered against a defendant, however, he has a right under the Fifth Amendment Due Process Clause to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Id.* 470 U.S. at 526, 105 S.Ct. at 1484 (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)); *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) (same).

█ A defendant does not have a constitutional right to be present at every interaction between the trial judge and a juror. *Gagnon,* 470 U.S. at 526, 105 S.Ct. at 1484 (citing *Rushen v. Spain,* 464 U.S. 114, 125–26, 104 S.Ct. 453, 459–60, 78 L.Ed.2d 267 (1983)). Nor does due process require the defendant's presence "when [his or her] presence would be useless, or the benefit but a shadow." *Stincer,* 482 U.S. at 745, 107 S.Ct. at 2667 (quoting *Snyder,* 291 U.S. at 105–06, 54 S.Ct. at 332). Rather the constitutional right to be present exists " 'to the extent that a fair and just hearing would be thwarted by his absence,' " and to that extent only. *Id.* (same).

In *United States v. Bradshaw,* 787 F.2d 1385, 1389 (10th Cir.1986), we concluded that, in determining how to handle allegations of juror bias, a district court is necessarily vested with broad discretion. We there observed:

"An important part of the district judge's broad discretion centers on his response to allegations of juror bias or misconduct. For example, it is within the trial court's discretion to determine whether and when to hold an evidentiary hearing on such allegations. If the judge orders an investigative hearing, it is within his discretion to determine its extent and nature." *Id. (quoting United States v. Hendrix,* 549 F.2d 1225, 1227–28 (9th Cir.1977) *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977)).

█ We think it clear that Santiago's rights under the Fifth Amendment Due Process Clause were not violated by his exclusion from the trial judge's *ex parte* questioning of the juror on the record. It is the trial court's obligation to assure that juror bias has no effect on the outcome of the case. To the extent that the law in circumstances not here present requires it, or a trial judge invites it, parties or their counsel may assist the court in addressing allegations of juror bias. However, experience teaches that trial judges typically, and quite properly, act independently, at least initially, to investigate and address alleged juror bias or misconduct.

In the instant case, we find that the district judge's discussion, *ex parte* but on the record, with the juror was an appropriate exercise of his discretion and did not deprive the defendant of any constitutionally protected right. The presence of the appellant or his counsel was not required to ensure fundamental fairness or a "reasonably substantial ... opportunity to defend against the charge." *Snyder,* 291 U.S. at 105–06, 54 S.Ct. at 332. As the record of the trial judge's brief interview with the juror demonstrates, Santiago could have done nothing had he been present, nor would he have gained anything by attending. His attorney was afforded the opportunity to submit questions for the judge to ask, was read the transcript of the examination and related the substance of it to his client. We further agree with the district court's view that the appellant's and his attorney's presence could have been coun-

neous objection, however, we reverse only if the record demonstrates clear prejudice constituting plain error.

terproductive. In the circumstances of this case, due process was not violated by Santiago's exclusion from the judge's examination of the juror.[6]

Nor do we find that the appellant was in any way prejudiced by his absence. Rule 43, Fed.R.Crim.P. requires that the defendant be present "at every stage of the trial...." As we have stated, however, reversal based on a defendant's absence at a particular proceeding is not warranted if the "record completely negatives any reasonable possibility of prejudice arising from such error." *United States v. Jorgenson*, 451 F.2d 516, 520–21 (10th Cir. 1971) (quoting *Jones v. United States*, 299 F.2d 661, 662 (10th Cir.1962), *cert. denied*, 371 U.S. 931, 83 S.Ct. 294, 9 L.Ed.2d 239 (1962)).

Our holding in the particular circumstances of this case should not be read as a general endorsement of the practice of conducting judicial examinations of jurors for bias or misconduct without counsel and the parties present. There no doubt will be situations where fundamental fairness requires the presence of counsel and even their active participation in questioning the juror. There may even be cases where due process requires the presence of the defendant, although the possibility of juror intimidation would seem to render such instances rare in criminal cases. Nevertheless, it is clear that in the instant case the presence of the defendant and his counsel was not necessary and their absence did not deny the defendant due process. Any possible prejudice was obviated by the court reporter's reading the record of the entire juror interview to defense counsel

who then related it to his client. Santiago himself was aware of the trial judge's procedure and neither he nor his counsel objected to it. Indeed, defense counsel at no time requested that his client be present during the juror's interview. After conferring with the defendant, defense counsel assured the trial judge that neither he nor his client had any objection to retaining the alternate juror. Accordingly, we find that no reversible error can be attributed to the defendant's absence while the judge questioned the juror.

## IV. SENTENCING.

Santiago's sentence was imposed pursuant to the United States Sentencing Commission Guidelines Manual (Nov. 1, 1990) (hereafter "Guidelines"). The district court assigned a base offense level of six under Guidelines § 2F1.1 governing offenses involving fraud or deceit. Based on its finding of an $11,000 "intended" loss, the court enhanced the sentence three levels under § 2F1.1(b)(1)(D). Then the court granted a three level reduction under § 2X1.1(b)(1) governing attempts. The net result was an offense level of six.[7] Santiago's criminal history category resulted in a guideline imprisonment range of from zero to six months. He was sentenced to thirty-six months probation.

Santiago here challenges the district court's determination of loss under Guidelines § 2F1.1(b)(1)(D). The government cross-appeals the court's three level reduction under Guidelines § 2X1.1(b)(1) dealing with attempts.

---

**6.** This case is unlike *Larson* where we concluded that a defendant's mere presence in the courtroom during the instructing of the jury, closing arguments and the rendering of the verdict would have provided more than a shadow of benefit. As to those crucial phases of trial, we held that the defendant had been deprived of his due process right to exert a psychological influence upon the jury, primarily because there was a "reasonable possibility that the jury speculated adversely to the defendant about his absence from the courtroom." *Larson*, 911 F.2d at 396 (citations omitted).

While it is crucial in any trial to assure that jurors will render unbiased verdicts, a judge's *in camera* examination of a juror for possible bias

is not so critical a trial function that a defendant's presence to exert a psychological influence is constitutionally mandated. By its nature, that examination is not a trial "proceeding" that the defendant ordinarily would be expected to attend or one where jurors may question the defendant's absence or speculate adversely about it.

**7.** Also included, but not in issue on appeal, were a two level enhancement under the Guidelines § 2F1.1(b)(2) for an offense involving more than minimal planning, and a two level reduction for acceptance of responsibility pursuant to § 3E1.1. *See* Tr. Vol. II, p. 8, 11.

■ We review factual findings supporting a district court's offense level calculations under the clearly erroneous standard, *United States v. Poole*, 929 F.2d 1476, 1483 (10th Cir.1991), and afford due deference to the trial court's application of the Guidelines to the facts. *United States v. Johnson*, 911 F.2d 403, 406 (10th Cir. 1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1004, 112 L.Ed.2d 1087 (1991). However, we review *de novo* asserted errors of law in applying the Guidelines. *United States v. Whitehead*, 912 F.2d 448, 451 (10th Cir. 1990).

## A. ENHANCEMENT UNDER GUIDELINES SECTION 2F1.1

■ Guidelines § 2F1.1(b)(1) allows sentence enhancement based on the dollar value of a loss exceeding $2,000. Where fraud results in actual loss, that value will be used for enhancement under Guidelines § 2F1.1. *United States v. Smith*, 951 F.2d 1164, 1166 (10th Cir.1991). If there was no actual loss or if a probable or intended loss was greater than the actual loss, the larger figure will be used. Application Note 7, Guidelines § 2F1.1; *Smith*, 951 F.2d at 1166; *United States v. Palinkas*, 938 F.2d 456, 465 n. 19 (4th Cir.1991); *United States v. Schneider*, 930 F.2d 555, 556 (7th Cir. 1991).

In the instant case, there was no actual loss because Santiago's attempt to defraud his insurance company was prevented by police intervention. The district court therefore turned to Application Note 7, Guidelines § 2F1.1, concluding, in pertinent part, that:

> "The illustration [Application Note 7] says you take the amount which was intended or probable. Well, that really doesn't cover this, because the defendant was intending to defraud the insurance company of $11,000. That was the claim he put in. *Now, as a practical matter, it wouldn't work for that, because the blue book was about $4,800, and that's all the insurance company would have paid out under any circumstances.* So the probable and intended are not the same in this instance. Under those cir-

cumstances, I think that the guidelines would contemplate the use of the intended amount." Tr. Vol. II, p. 8 (emphasis added).

Accordingly, the district court enhanced Santiago's sentence three levels under Guidelines § 2F1.1(b)(1)(D) for an intended (rather than probable or actual) loss exceeding $10,000.

As a preliminary matter, we agree with the district court's approach in disparately treating probable and intended losses as those terms are disjunctively provided in Application Note 7, Guidelines § 2F1.1. The Note's language mandates that treatment, and obviously was included to encompass the myriad factual circumstances in which, although they often may be equal, the loss that probably would have occurred had the crime been completed differs from the loss intended.

■ In the instant case, however, we conclude as a matter of law that the intended loss was equal to the probable loss of $4,800. This case presents the question, apparently of first impression, whether the loss a defendant subjectively believes he or she can, and intends to, impose on a fraud victim governs for sentencing under Guidelines § 2F1.1 when the economic reality is that the probable or actual loss could not in any circumstances have exceeded a discernible lesser amount. We answer that question in the negative, and hold that, whatever a defendant's subjective belief, an intended loss under Guidelines § 2F1.1 cannot exceed the loss a defendant in fact could have occasioned if his or her fraud had been entirely successful.

Our conclusion results from the Guidelines' definitions of loss and our cases addressing loss valuation. Guidelines § 2F1.1 itself does not define the meaning of loss, but its Application Note 7 refers to the commentaries under § 2B1.1 for evaluating losses. Section 2B1.1's Application Note 2 states that:

> " 'Loss' means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the *Loss is the fair market value* of the

particular property at issue.... In cases of partially completed conduct, the loss is to be determined in accordance with the provisions of § 2X1.1...." (emphasis added).

While not directly applicable, Guideline § 2X1.1's Application Note 2, regarding attempted thefts, similarly indicates that the *value* of the items the defendant intended to steal should be considered for sentencing under that section.

The Guidelines thus imply that the value of the property taken—by fraud, deceit or otherwise—is the upper limit of any loss valuation upon which a sentencing enhancement may be based. In making that observation, we do not imply that the defendant's actual gain or victim's actual loss defines a loss limit for sentencing purposes. To the contrary, we have applied section 2B1.1's definition of loss literally to affirm sentencing adjustments based on the value of the property taken when it exceeded the actual harm suffered by the victim. *See United States v. Johnson,* 941 F.2d 1102, 1114 (10th Cir.1991) (affirming sentence enhancement based on value of fraudulently acquired real estate that exceeded actual loss); *United States v. Westmoreland,* 911 F.2d 398, 399 (10th Cir. 1990) (fair market value of items taken that exceeded victim's ultimate loss constituted loss for purpose of sentence enhancement).[8] Nor has timely police intervention to prevent or diminish an actual loss affected our determination of the defendant's culpability for sentencing purposes. *Id.* (both cites).

We have not hesitated, however, to reverse sentencing adjustments based on estimates or valuations of loss that bore no relation to economic reality. Thus in *Smith,* a case involving fraudulent acquisition of federally insured real estate loans, we determined that the net, rather than gross, loss measured by the difference between the value given and received controlled when imposing sentencing enhancement points. Noting that any approach other than net loss valuation ignores reality, we concluded that the record did not indicate: (1) that the defendant had "realistically intended" the loss for which he was sentenced under Guidelines § 2F1.1, or (2) that "a loss in that amount was probable." *Smith,* 951 F.2d at 1168; *See also Schneider,* 930 F.2d at 559 (sentence adjustment under Guidelines § 2F1.1 reversed because estimate of loss bore no relation to economic reality).

We reached a similar result in *Whitehead,* where the defendant had fraudulently obtained a lease and option to buy a home. His sentence had been enhanced under Guidelines § 2F1.1 based on a loss valuation that included the home's value. We reversed, declining to accept the government's contention that the mere purchase of an option equated with an attempt to purchase the home itself and therefore the home's full value should have been considered part of the loss. *Whitehead,* 912 F.2d at 452. On the facts there presented, it was far from certain that the defendant would have been successful in exercising his option to purchase or that the full value of the home would have been lost. *Id.*

The principle that emerges when the Guidelines are considered in light of the above cited cases is that the *fair market value* of what a defendant has taken or attempted to take defines the upper limit for loss valuation under Guidelines § 2F1.1. Although the language of that Guidelines section leaves room for a contrary interpretation, we conclude that a valuation or estimate of loss that exceeds that limit impermissibly ignores economic reality. *See, e.g., Smith,* 951 F.2d at 1167; *Schneider,* 930 F.2d at 559; *Whitehead,* 912 F.2d at 452.

In the instant case, Santiago filed a fraudulent claim seeking $11,000 from his insurance company. Nothing suggests that he would not have taken that sum if he could have. The record establishes,

---

**8.** Other circuits have similarly held. *See, e.g., United States v. Brach,* 942 F.2d 141, 143 (2d Cir.1991); *United States v. Haddon,* 927 F.2d 942, 951–52 (7th Cir.1991); *United States v.* *Davis,* 922 F.2d 1385, 1392–93 (9th Cir.1991); *United States v. Cockerham,* 919 F.2d 286, 289 (5th Cir.1990); *United States v. Johnson,* 908 F.2d 396, 398 (8th Cir.1990).

however, that Santiago's subjective belief in his car's value was at odds with the economic reality that his insurance company would not have paid more than the car's $4,800 blue book value in any circumstances. *See* Tr. Vol. II, p. 8.

Obviously, factual impossibility is not a defense to the crime for which Santiago was convicted. By imposing a base offense level of 6 irrespective of the amount of loss, however, Guidelines § 2F1.1 allows punishing a culpable defendant who is responsible for a fraudulent or deceitful taking of even *de minimis* value. That Guidelines section then allows awarding additional punishment points for different levels of proven loss over $2,000.

As we have concluded, however, such sentencing enhancements may be based only on an economically realistic valuation of property a defendant has taken or attempted to take.[9] We hold as a matter of law that, for purposes of sentencing enhancement under Guidelines § 2F1.1 and its Application Note 7, a defendant cannot be punished for an intended loss greater than the economic worth of the property to which the fraud is directed. Thus the probable and intended loss are identical in this case. Although it is clear that Santiago's sentence must be enhanced, the government did not prove a basis for the full enhancement adopted by the district court. We therefore reverse the district court's determination of loss and remand for re-sentencing using the correct loss valuation.

### B. REDUCTION UNDER GUIDELINES SECTION 2X1.1(b)(1)

The government cross-appeals the district court's granting of a three level sentence reduction under Guidelines § 2X1.1(b)(1) and its application Note 4 which control attempts. Tr. Vol. II, p. 8–9. The trial court based that reduction on the

fact that, because the police intervened to prevent Santiago's attempted fraud, it could not have reached fruition. *Id.*

The government argues that this sentence reduction was unwarranted because Santiago had completed all the acts he believed necessary to complete the crime charged. It maintains that the fact that the police interrupted the fraud should not diminish the extent or seriousness of the defendant's culpability for purposes of sentencing. *See Westmoreland*, 911 F.2d at 399 (sentencing reduction for incomplete attempt unwarranted where "good police work" interrupted attempted theft). Santiago responds that § 2X1.1(b)(1) was applied correctly.[10]

Guidelines § 2X1.1(b)(1) provides, in pertinent part, that:

"If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful completion of the offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control."

Application Note 4, guidelines § 2X1.1, explains a circumstance in which a reduction is warranted:

"In certain cases, the participants may have completed (or have been about to complete but for apprehension or interruption) all of the acts necessary *for the successful completion of part, but not all, of the intended offense.* In such cases, the offense level for the count ... is whichever of the following is greater: the offense level for the intended offense minus 3 levels ... or the offense level for the part of the offense for which the necessary acts were completed (or about to be completed but for apprehension or interruption). For example, where the

---

9. Our conclusion has no bearing on, and in no way increases, the government's burden to calculate a loss. Clearly that burden is not onerous, and a loss need not be calculated with exactitude. *See* Guidelines § 2B1.1, Application Note 3; *Smith*, 951 F.2d at 1167 n. 5.

10. We find without merit, and therefore reject, Santiago's argument that, under the Guidelines § 5K2.0, the district court should have departed downward three levels for the alleged mitigating circumstance that he was entrapped. Entrapment is not a mitigating circumstance but a defense, and here the jury did not believe or accept that defense.

intended offense was a theft of $800,000 [but only $30,000 is stolen], the offense level is the offense level for the theft of $800,000 minus 3 levels, or the offense level for the theft of $30,000, whichever is greater." (emphasis added).

■ We conclude that the district court misapplied the Guidelines when it granted a sentence reduction. It is evident that Santiago had completed all the acts he believed necessary to carry out the fraud and therefore, under the plain language of Guidelines § 2X1.1(b)(1), he was not entitled to a reduction.

Application Note 4, Guidelines § 2X1.1, does not require or authorize a different result. It contemplates a reduction where all the acts necessary to *part* of the offense are completed, but the entire scheme is not successful. Thus, using the Guidelines example provided, where a theft of $800,000 is partially completed by theft of $30,000 of that sum, the greater of: (1) the offense level for the $800,000 (minus three levels), or (2) the offense level for $30,000 is used. Although Santiago had performed all acts he believed necessary, his fraud was not partially successful in the sense of obtaining part of the intended proceeds of fraud. Application Note 4 is thus inapplicable. Accordingly, we reverse the district court's sentence reduction under Guidelines § 2X1.1(b)(1) and remand for sentencing consistent with this opinion.

## V. CONCLUSION.

For the foregoing reasons, the judgment of conviction against the defendant Santiago is affirmed. However, those aspects of the defendant's sentencing held erroneous are REVERSED, and the case is REMANDED to the district court for resentencing in accordance with this opinion.