996 F.2d 312
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert J. NELSON, Defendant-Appellant.
 No. 92-1204.
 United States Court of Appeals, Tenth Circuit.
 May 25, 1993.
 
 Before TACHA, BALDOCK and KELLY, Circuit Judges.
 ORDER AND JUDGMENT*
 TACHA, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Robert J. Nelson pleaded guilty to the misapplication of monies, funds, or credits by a bank employee in violation of 18 U.S.C. § 656 and was sentenced to fifteen months imprisonment. Mr. Nelson appeals that sentence, arguing that the sentencing court used an erroneously high "loss" figure in determining his offense level under the United States Sentencing Guidelines. We exercise jurisdiction under 18 U.S.C. § 3742 and affirm.
 
 
 3
 Mr. Nelson was employed as a clerk-typist at the United Bank of Denver (the "Bank") in Denver, Colorado. In early November, 1991, Nelson stole from the Bank a box of 250 blank United Bank of Denver cashier's checks. Nelson then imprinted all of the checks in amounts payable totalling $237,992 and imprinted each check with the United Bank of Denver signature block. Nelson quit his job at the Bank and, with the aid of two other individuals, caused three of the checks to be cashed totalling $2,900.50.
 
 
 4
 When Nelson learned that the Federal Bureau of Investigation ("FBI") was investigating the negotiation of one of the stolen checks, he ceased attempting to cash them. After first disposing of the remainder of the checks in a dumpster near his home, he retrieved them for fear that someone else might try to negotiate them. When the FBI confronted Nelson, he confessed to his involvement and led the FBI agents to his pickup truck, where he had stashed the remaining checks.
 
 
 5
 Nelson's presentence report calculated the "loss" involved to be the face value of the imprinted checks--$237,992. Nelson timely objected to this aspect of the report, contending that the loss was only the face value of the checks actually cashed--$2,900.50. If the loss is calculated at $237,992, U.S.S.G. § 2B1.1(b)(1)(K) provides for a ten-level increase to the base offense level of four; if the loss is calculated at $2,900.50, § 2B1.1(b)(1)(D) provides for only a three-level increase. See United States Sentencing Commission, Guidelines Manual, § 2B1.1(b)(1)(D), (K) (Nov. 1992). The district court overruled Nelson's objection and applied the larger figure, which resulted in a ten-level increase. Nelson now appeals that determination.
 
 
 6
 The parties have stipulated to all of the relevant facts. We give due deference to the trial court's application of the Guidelines to the facts, but review asserted errors of law de novo. United States v. Santiago, 977 F.2d 517, 524 (10th Cir.1992). "The question of what factors the guidelines direct the court to consider in computing the amount of a loss is a legal question that we review de novo." United States v. Lara, 956 F.2d 994, 998 (10th Cir.1992).
 
 
 7
 The theft of the Bank's imprinted cashier's checks is a property crime subject to a base offense level of four and increased offense levels where the "loss" exceeds $100. See U.S.S.G. § 2B1.1. Application note 2 defines "loss" as
 
 
 8
 the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.... Examples : (1) In the case of a theft of a check or money order, the loss is the loss that would have occurred if the check or money order had been cashed.
 
 
 9
 Id. comment. (n. 2) (emphasis added). Under the plain language of the Guidelines, then, the loss for sentencing purposes is the total face value of the checks regardless of whether the checks were cashed. See Lara, 956 F.2d at 998; see also United States v. Hershberger, 962 F.2d 1548, 1554 (10th Cir.1992).
 
 
 10
 While Nelson acknowledges this specific and seemingly dispositive language, he appears to contend that it is inapplicable because the government never demonstrated that Nelson either intended to cash or could have cashed the remaining checks. This contention fails for several reasons.
 
 
 11
 First, even if Nelson's scheme was only partially complete in terms of reaping ill-gotten gains, his offense of conviction was complete when he took possession of the checks. Given a completed offense of conviction, § 2B1.1 asks how much the defendant stood to benefit, not whether he intended to take the steps necessary to achieve that result.
 
 
 12
 Second, Nelson's argument regarding his potential for success is irrelevant. Nelson clearly cannot rely on the FBI investigation as the impediment to cashing the checks. See United States v. Westmoreland, 911 F.2d 398, 399 (10th Cir.1990) ("The fact that good police work diminished the actual loss to the employer victim should not affect the determination of the extent of defendant's culpability and responsibility for purposes of sentencing."). Rather, Nelson relies on United States v. Santiago, 977 F.2d 517 (10th Cir.1992), which involved a sentence for insurance fraud under U.S.S.G. § 2F1.1. In that case, the defendant staged the theft of his truck and filed a fraudulent insurance claim. 977 F.2d at 518-19. The pertinent issue was whether the "loss" for sentencing purposes was the amount the defendant had specified in his claim--$11,000--or the book value of the truck--$4,800. Id. At the time, Application note 7 to § 2F1.1 pegged the "loss" as the greater of the actual loss or the "probable or intended" loss. Id. at 524. After noting that there was no actual loss, the court concluded that, because the insurance company would have paid no more than book value, the "probable" loss was $4,800. Id. at 525.
 
 
 13
 Santiago has no bearing on this case. First, it was decided not under § 2B1.1 but under § 2F1.1, which contains special rules for calculating loss for fraud. Second, § 2F1.1 was amended prior to Nelson's offense to remove the reference to "probable" loss. See United States v. Wimbish, 980 F.2d 312, 314 (5th Cir.1992), cert. denied, --- U.S. ----, 1993 WL 80836 (May 17, 1993). Thus, it does not matter whether Nelson "probably" would have succeeded. Finally, even if the old version of the inapplicable provision did apply, the analogy to this case is flawed. Santiago would be analogous only if Nelson had shown that he would have received less than he was seeking--the face value of each check presented. It is clear, however, that, absent police intervention, merchants presented with the checks would have cashed them for the full amount.
 
 
 14
 Because the district court properly calculated the "loss" under U.S.S.G. § 2B1.1, the sentence is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3