**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 17 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

RONALD D. FISHER,

     Defendant - Appellant.

No. 99-4001
(D.C. No. 96-CR-103)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL** and **LUCERO**, Circuit Judges.

     Defendant-Appellant Ronald Fisher concocted and executed a scheme to obtain money from various federally insured financial institutions and private lenders by making false representations about his past earning history, the amount of assets he currently held, and his ability to repay loans made to him or his companies. Once Fisher unlawfully persuaded an entity to lend him money, he

---

[*] After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

would then use those funds to build the appearance of a larger net worth in order to induce further lending by other financial institutions.

Fisher's scheme collapsed, and on July 2, 1997, he was named in a 28-count superseding indictment. On March 10, 1998, Fisher pled guilty to Count 8, false statement to a financial institution, in violation of 18 U.S.C. § 1344(1); Count 24, wire fraud, in violation of 18 U.S.C. § 1343; Count 25, serving as an airman without an airman's certificate, in violation of 49 U.S.C. § 46306(b)(7); and Count 28, failure to appear, in violation of 18 U.S.C. § 3146(a)(1). In exchange for Fisher's plea, the government agreed, inter alia, to dismiss the remaining counts of the superseded indictment and to recommend that Fisher receive the maximum allowable credit for acceptance of responsibility under U.S.S.G. § 3E1.1. (PSR at 6.)

Judge David Sam adopted the factual findings and recommendations of the pre-sentence report ("PSR"), (Supp. App., Vol. III, at 63-64), which included a recommendation not to grant Fisher an acceptance of responsibility reduction, (PSR at 25, ¶ 81; id. at 27, ¶ 101). The PSR established Fisher's base offense level at six, (PSR at 26, ¶ 85), and adjusted upward an additional nineteen points. The nineteen point upward adjustment resulted from a thirteen point adjustment because the loss involved in Fisher's fraud and deceit exceeded $2.5 million, but was less than $5 million, see U.S.S.G. § 2F1.1(b)(1)(N), (PSR at 26, ¶ 86); two

points because the offense involved more than minimal planning and a scheme to defraud more than one victim, see U.S.S.G. § 2F1.1(b)(2), (PSR at 26, ¶ 87); and four points because the offense affected a financial institution and Fisher derived more than $1 million in gross receipts from the offense, see U.S.S.G. § 2F1.1(b)(6)(B); (PSR at 26, ¶ 88). The PSR also concluded that Fisher had a total criminal history score of fourteen, which established a criminal history category of VI. (Id. at 33, ¶ 112). Judge Sam adopted the PSR and sentenced Fisher to 137 months' imprisonment, and 60 months' supervised release, (Supp. App., Vol. III, at 65), and ordered that Fisher pay $2,316,722.06 in restitution, (id. at 68).

Fisher challenges the thirteen point upward adjustment, arguing that "several of the calculations contained in the PSR exceed the actual loss sustained" by the various victims. (Aplt. Br. at 9.) Fisher also argues that the district court erred in not applying the acceptance of responsibility downward adjustment. We address each argument in turn, and review "the district court's legal interpretation of the guidelines de novo, and review its findings of fact for clear error, giving due deference to the district court's application of the guidelines to the facts." United States v. Ensminger, 174 F.3d 1143, 1145 (10th Cir. 1999) (quotations omitted).

## I. Calculation of Losses Under U.S.S.G. § 2F1.1(b)(1)(N)

On appeal, there is no dispute as to some of the losses Fisher's fraud and deceit involved. Fisher does not challenge the PSR's conclusion that he was responsible for $5,515.89 from one outstanding unpaid loan from U.S. Bank, (PSR at 12, ¶ 30; Aplt. Br. at 9); $67,483 from a second outstanding loan from U.S. Bank, (PSR at 12, ¶ 31); $116,000 for unrecovered funds from a line of credit provided by U.S. Bank, (id. at 12-13, ¶ 32); $520,000 from a loan provided by Provo Finance LLC, (id. at 14, ¶ 37-38); and $350,000 from a loan provided by certain individuals, (id. at 15, ¶ 43). Adding these sums together, Fisher has conceded that he was at least responsible for $1,058,998.89 in losses.

Fisher, however, challenges two losses that the sentencing court relied upon to bump Fisher into the $2.5 million through $5 million upward adjustment range. The first loss involved fraudulently obtained cashier's checks. Fisher made $1,657,722.85 worth of fraudulent deposits into his account at the Universal Campus Credit Union (UCCU), (Aple Br. at 4; Supp. App., Vol. III, at 34, lines 19-22), and used this artificial bank balance to obtain $1,955,500 in cashier's checks from UCCU. The PSR used the $1,657,722.85 figure to determine the loss for sentencing guideline calculations. (PSR at 17, ¶ 49.) The second loss

involved two check kiting schemes.[1]  Fisher kited checks between accounts held at First Interstate Bank and Bank One, totaling $352,308.06, (PSR at 19, ¶ 56), and kited checks between accounts held at Family First Federal Credit Union and Bank One, totaling $383,071.99, (id., ¶ 58).

Fisher argues that the $1,657,722.85 number attributed to the cashier check scheme is incorrect, and as a result of various offsetting payments, should actually only be $520,837.[2]  Fisher similarly asserts that the district court erred in relying on the combined $735,380.05 losses from the two check kiting schemes because Fisher eventually re-paid the balance due on all the money that was at risk.

We find neither of these arguments persuasive.  The fundamental problem with Fisher's arguments is that they ignore the clear language of Note 7(b) to

---

[1]  "Check kiting is a scheme designed to separate the bank from its money by tricking it into inflating bank balances and honoring checks drawn against accounts with insufficient funds."  United States v. Frydenlund, 990 F.2d 822, 824 (5th Cir. 1993) (quotation omitted).

[2]  To get to that lower number, Fisher argues that though he deposited $1,657,722.85 worth of bad checks into his account, he only withdrew $1,500,435.80 from that account.  (Aplt. Br. at 10.)  From that approximate $1.5 million starting point, Fisher believes the sentencing court should have also deducted roughly $112,000 from Fisher's checking account at UCCU, a $400,000 wire transfer Fisher made to UCCU, and $469,000 from Fisher's assets sold to offset the loss to UCCU.  (Aplt. Br. at 10-11.)

U.S.S.G. § 2F1.1 (1997).[3]  That language expressly provides that "where the intended loss is greater than the actual loss, the intended loss is to be used." Under the cashier check scheme, the "intended loss" Fisher tried to effectuate was actually $1,955,500, the amount of the cashier checks he unlawfully obtained from UCCU.  Since the intended loss ($1,955,500) was greater than what the PSR found to be the actual loss ($1,657,722.85), the intended loss figure should have been used.[4]  Under the check kiting scheme, the intended loss Fisher tried to effectuate totaled $735,380.05.  Thus, even assuming Fisher is correct that those financial institution's actual losses were zero because of his paybacks, the intended loss amount governs.[5]

As a result, it is obvious that the district court did not commit clear error in finding Fisher's loss totaled between $2.5 million and $5 million.  Fisher has

---

[3] Both parties' briefs cite to this commentary as Note 8, but in the 1997 Sentencing Guidelines, which governs Fisher's sentence, this provision was numbered as Note 7.

[4] Indeed, Judge Sam recognized this fact, stating that the $1,657,722.85 figure "is a very conservative figure and should more accurately be in the range of $1.955 million. . . . However, the Court will defer to the [pre-sentence] report and use the loss as represented . . . of 1.657 plus million dollars."  (Supp. App., Vol. III, at 56-57.)

[5] Importantly, these paybacks were not paid as secured collateral.  See U.S.S.G. § 2F1.1, n. 7(b) ("[I]f a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan.") (emphasis added).

conceded he caused over $1 million in losses to U.S. Bank, Provo Finance LLC, and other individuals, and the generously low calculation of $1.6 million of loss suffered by UCCU, and the $735,000 (rounded) of loss suffered by the institutions involved in the check kiting schemes, put Fisher squarely within the § 2F1.1(b)(1)(N) range.[6]

Fisher counters by citing United States v. Santiago, 977 F.2d 517, 524 (10th Cir. 1992), for the proposition that "the amount of loss which a defendant intends to impose on a fraud victim is not controlling for sentencing . . . when the 'economic reality' is that the defendant's intended loss . . . could not have exceeded the loss that the defendant in fact could have caused if his or her fraud had been entirely successful." (Aplt. Br. at 8-9). We agree with Fisher's restatement of Santiago, but find it inapposite to Fisher's appeal. In Santiago, the

---

[6] Moreover, at sentencing, Fisher accepted the government's proffer that at the time the UCCU's cashier's checks were issued, there was no loan agreement, no loan approval, nor any prior authorization for the checks because the bank had no security or collateral. (Supp. App., Vol III, at 46.) As a result, none of Fisher's assets sold to offset the UCCU's losses were "pledged to secure" the UCCU's issuance of cashier's checks. See U.S.S.G. § 2F1.1, n. 7(b); see also United States v. Smith, 951 F.2d 1164, 1167 (10th Cir. 1991) ("Under the Guidelines, net loss must reflect the value of the property securing the loans.") (emphasis added).

Additionally, Fisher's other attempts to reduce the losses he caused the UCCU occurred after the UCCU took aggressive efforts, such as litigation, to recoup their losses. (Id. at 40.) We refuse to allow Fisher's payments to the UCCU under such conditions to be a means for Fisher to purchase a sentence reduction. Cf. United States v. Pappert, 112 F.3d 1073, 1079 (10th Cir. 1997) ("We do not allow defendants to barter prison time in exchange for restitution.").

defendant attempted to defraud his insurance company by putting in an $11,000 fraudulent claim for a stolen car. See Santiago, 977 F.3d at 518. However, the bluebook value of the car was at most $4,800, which constituted the highest amount the insurance company would have paid under its policy. See id. Thus, it was economically impossible for the defendant to effectuate the amount of loss he intended, and the court held that for the purposes of § 2F1.1, his subjective beliefs about intended loss cannot exceed the loss he in fact could have occasioned had he been successful. See id. at 524. Here, for the challenged acts on appeal, Fisher's intended losses all were economically feasible, as he received money in the form of cashier's checks and deposits to various bank accounts.

Accordingly, we affirm the district court's calculation of losses under § 2F1.1 as totaling between $2.5 million and $5 million.[7]

## II. Acceptance of Responsibility Under U.S.S.G. § 3E1.1

At sentencing, the sentencing court refused to grant Fisher a two point reduction for acceptance of responsibility. The court made a factual finding that:

> [The PSR] indicates that the defendant failed to submit a written statement with which to assess his acceptance of responsibility and his behavior

---

[7] We deny Fisher's pro se motion to supplement the record on appeal with his own new calculations concerning the amount of financial loss because these calculations were not presented to the district court below.

failing to appear exhibits conduct which is inconsistent with a defendant who accepts responsibility for their offense, and the Court would agree with that, counsel. And so the Court will not give the defendant credit for acceptance of responsibility.

(Supp. App., Vol 3, at 61-62.)

Fisher challenges this denial of an acceptance of responsibility reduction, arguing that under U.S.S.G. § 3E1.1, he was not required to provide written information to a probation officer to assess his acceptance of responsibility. (Aplt Br. at 14.) Moreover, Fisher adds, under § 3E1.1(b)(2), which is in the disjunctive, the adjustment for acceptance of responsibility is applicable if the defendant simply pleads guilty. (Id.)

Neither of these argument have merit. Section 3E1.1. reads:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

>   (1) timely providing complete information to the government concerning his own involvement in the offense; or

>   (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

Though § 3E1.1 does not require Fisher to submit a written statement to a probation officer, it is certainly within the sentencing judge's purview to interpret Fisher's decision not to submit such a written statement as not "clearly demonstrat[ing]" acceptance of responsibility. Moreover, the sentencing court also premised the denial of the acceptance of responsibility reduction upon Fisher's failing to appear, which was viewed as exhibiting conduct inconsistent with the reduction. "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, n.5 (cmt.). Fisher has provided us with no arguments overcoming this great deference review standard.

Similarly unpersuasive is Fisher's disjunctive argument based on § 3E1.1(b). As the text of § 3E1.1(b) makes clear, that subsection only determines if a defendant who has already received a two level acceptance of responsibility reduction under § 3E1.1(a) is also entitled to an additional one-level reduction. Since Fisher never received the predicate two-point reduction, his arguments under subsection (b) are unavailing. Additionally, the commentary to § 3E1.1 clearly states, "A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, n.3 (cmt.).

Accordingly, the district court's judgment is affirmed.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge