**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 15 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

EDWARD J., a juvenile,

      Defendant-Appellant.

No. 99-2315

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-99-61-JP)**

---

Jason Bowles (Norman C. Bay, United States Attorney, with him on the brief),
Assistant United States Attorney, Albuquerque, New Mexico, for Plaintiff-
Appellee.

Richard A. Winterbottom (John V. Butcher, Assistant Public Defender, with him
on the briefs), Assistant Public Defender, Albuquerque, New Mexico, for
Defendant-Appellant.

---

Before **BRORBY, ANDERSON** and **HENRY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

This appeal of a juvenile delinquency proceeding involves a single evidentiary issue concerning Federal Rule of Evidence 803(4), and the more complicated question of whether the district court erred by receiving closing arguments and issuing its verdict in written form. We exercise our jurisdiction under 28 U.S.C. § 1291. While we examine the constitutional arguments presented, we ultimately affirm the district court because any perceived error was either harmless or invited.

## I. BACKGROUND

Edward J. is a juvenile who lived in his family's compound on the Navajo Reservation in New Mexico. Edward's two young nieces, who we will refer to as Jane Doe A and Jane Doe B, also lived at the compound. During the summer of 1998, Edward was nearly sixteen years old, Jane Doe A was ten years old, and Jane Doe B was eight. In June of 1998, Edward's sister found a note written by Jane Doe A stating "I don't want to be here any more, because I hate it when Edward touches me." Edward's sister discussed the accusation with Jane Doe A and then contacted local social workers, who removed the girls from the family compound and took them to a medical center for a physical examination.

Two doctors examined and interviewed the girls. Dr. Benjamin Hoffman

conducted the initial exam, including a medical history interview, and Dr. Gillian Mair performed a genital exam on each girl. Pursuant to Federal Rule of Evidence 803(4),[1] the district court allowed Dr. Hoffman to testify regarding statements the girls made to him during the examinations. Dr. Hoffman, referring to the medical reports he made the day of the examinations, testified Jane Doe A told him Edward touched her in her "private," pointing toward her vagina, and her "bottom." Dr. Hoffman went on to describe his entire interview with Jane Doe A, which included her statements that Edward had forced her to engage in various sexual acts. In a separate interview, Jane Doe B told Dr. Hoffman the same basic story, which Dr. Hoffman testified included an accusation that Edward "takes off my clothes and gets on top of me." At trial, both girls testified consistently with their comments to Dr. Hoffman. Edward also testified at trial, admitting he

---

[1] Rule 803 provides certain exceptions to the hearsay rule, and states in relevant part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> ....
>
> (4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

occasionally struck his nieces, but denying he ever sexually abused them.

At the close of evidence, the district court asked for additional briefing on the admissibility of the two medical reports which contained the girls' statements to Dr. Hoffman. Edward's counsel then had the following exchange with the district court:

> COUNSEL: May we also file written closing arguments, Your Honor, on June 12th or – I don't mind if you set a page limit, but I would like an opportunity to –
>
> THE COURT: That's fine.
>
> COUNSEL: – either orally or written[], do a summation to the Court.
>
> THE COURT: That's fine. You may do that in writing.
>
> COUNSEL: Thank you, Your Honor.
>
> THE COURT: By July 12 [1999].

The parties submitted their written arguments on the admissibility of Dr. Hoffman's testimony and medical reports on July 16, 1999. The government filed its written summation on the same day, while Edward's counsel filed a request for oral summation instead. In a written order, the district court denied the request for oral summation and overruled Edward's objections to Dr. Hoffman's testimony. Contemporaneously with this order, the district court, issued its verdict in written form finding Edward guilty of all five counts listed in the

-4-

indictment.[2] The district court subsequently held a dispositional hearing and sentenced Edward to probation until his twenty-first birthday. As special conditions of his probation, the district court ordered Edward to spend at least six months in a youth detention center, followed by up to a year in a transitional youth center, prior to his return to the community. The district court also ordered Edward to pay restitution in the amount of $560.05.

Prior to ending the dispositional hearing, the district court notified Edward of his right to appeal. Edward timely availed himself of this right, arguing the district court erred by (1) "admitting into evidence the alleged child victims' statements to a doctor under Federal Rule of Evidence 803(4) without proof that each of the statements was made with the children's understanding of the medical significance of being truthful," and (2) "depriving the defendant of his right to be present at all critical stages of the bench trial when it denied his request for oral summation and delivered its verdict in writing."

---

[2] The indictment charged Edward with five separate violations of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031 to 5037, by engaging in, or attempting to engage in, sexual acts with Indian females under the age of twelve. *See* 18 U.S.C. § 1153; 18 U.S.C. § 2241(c); 18 U.S.C. §§ 2246(2)(A), (B), (D).

## II. STANDARD OF REVIEW

Whether the district court's refusal to grant oral summation violated Edward's due process rights is a legal question we review de novo. *See Larson v. Tansy*, 911 F.2d 392, 394 (10th Cir. 1990). However, Edward did not object to, or otherwise raise the issue of, the district court's issuance of a written verdict prior to the current appeal. Therefore, our review of this issue is for plain error, although we do not rigidly apply the plain error rule in this instance because the appeal raises constitutional issues. *See United States v. Santiago*, 977 F.2d 517, 521-22 (10th Cir. 1992). We review evidentiary rulings for abuse of discretion, and "[o]ur review of decisions admitting statements contested as hearsay is especially deferential." *United States v. Norman T.*, 129 F.3d 1099, 1105 (10th Cir. 1997), *cert. denied*, 523 U.S. 1031 (1988).

## III. DISCUSSION

### A. Admission of Statements Made to Dr. Hoffman

Edward argues on appeal the district court abused its discretion in admitting the testimony of Dr. Hoffman under the medical history hearsay exception of Fed. R. of Evid. 803(4) because the government failed to "establish the children understood the medical importance of telling the truth" to Dr. Hoffman during the examination. Edward argues without such evidence the

-6-

rationale behind the medical history exception is no longer applicable. While he concedes we have previously rejected this same argument, Edward encourages us to adopt the reasoning of the Eighth Circuit and establish a presumption that Rule 803(4) does not apply to statements given by young children to their doctors identifying their abusers unless the physician first explains to the child such information is important for their treatment. We decline to do so.

"The rationale behind the Rule 803(4) exception is that because a patient's medical care depends on the accuracy of the information she provides, the patient has a selfish motive to be truthful; consequently, a patient's statements to her physician are likely to be particularly reliable." *United States v. Pacheco*, 154 F.3d 1236, 1240 (10th Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999). The Eighth Circuit has held young children do not necessarily understand the medical importance of being truthful, and therefore young victims' statements to their doctors

> are admissible only when the prosecution is able to demonstrate that the victim's motive in making the statement was consistent with the purpose of promoting treatment – that is, "where the physician makes clear to the victim that the inquiry into the identity of the abuser is important to diagnosis and treatment, and the victim manifests such an understanding."

*Olesen v. Class*, 164 F.3d 1096, 1098 (8th Cir. 1999) (quoting *United States v. Renville*, 779 F.2d 430, 438 (8th Cir. 1985)). We have specifically rejected this

-7-

presumption against admission of hearsay evidence under the Rule 803(4)

exception in the case of children. *See Pacheco*, 154 F.3d at 1240-42; *Norman T.*,

129 F.3d at 1105-06. "Under the doctrine of stare decisis, this panel cannot

overturn the decision of another panel of this court" barring en banc

reconsideration, a superseding contrary Supreme Court decision, or authorization

of all currently active judges on the court. *United States v. Meyers*, 200 F.3d 715,

720-21 (10th Cir. 2000). Because none of the aforementioned events has come to

fruition, we reject Edward's argument and hold the testimony of Dr. Hoffman

properly admitted.[3]

---

[3] Because we decline to accept the Eighth Circuit's presumptions, the government had no burden here to show the girls understood the medical importance of telling the truth. Moreover, Edward fails to point to any evidence in the record tending to show the girls did not understand they were seeking medical treatment, or the importance of being truthful when talking to a doctor. In fact, the evidence in the record is to the contrary. The girls were eight and ten years old at the time of the examination, and both had been to the medical clinic on numerous occasions. As the district court noted, both girls were significantly older and more likely to understand the import of their statements than the five-year-old victim in Norman. 129 F.3d at 1105. Both girls were mature enough to request that a female doctor perform the genital exam. Furthermore, the girls testified at trial and Edward's counsel had a full opportunity to subject them to cross-examination. Even if we adopted the Eighth Circuit's reasoning, we would hold admission of Dr. Hoffman's testimony harmless given the nature of the girls' trial testimony and the district court's specific statement he found both girls "very credible." *See Norman T.*, 129 F.3d at 1106 n.3.

**B. Propriety of Written Summation and Delivery of the Verdict**

Edward next requests a new trial, arguing that "[b]y conducting the closing argument and verdict stage of the trial in writing, the trial court prejudicially deprived Edward of his right to be present under the Due Process Clause and Federal Rule of Criminal Procedure 43."[4]  In support of this argument, Edward cites cases establishing and applying the well-settled constitutional right of a criminal defendant to be present during critical stages of trial.  We find Edward's argument unpersuasive.

We begin with a discussion of the right to be present generally afforded to criminal defendants and the unique character of juvenile proceedings in contrast thereto.  In previously examining a criminal defendant's due process right to be present at trial, we quoted the Supreme Court in holding the right arises

---

[4]  Rule 43 is entitled "Presence of the Defendant," and states:

> (a) Presence Required.  The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

Fed. R. Crim. P. 43(a).  The Federal Rules of Criminal Procedure apply to juvenile delinquency proceedings unless they are inconsistent with the Federal Juvenile Delinquency Act.  *See* Fed. R. Crim. P. 54(b)(5).

> "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.... [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." ... [D]ue process does not require the defendant's presence "when [his] presence would be useless, or the benefit but a shadow."

*Larson*, 911 F.2d at 394 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-108 (1934)).  Employing this standard, we held a criminal defendant has a constitutional right to be present for summations delivered at a jury trial.  *See id.*; *Burrell v. Aaron*, 560 F.2d 988, 989 (10th Cir. 1977), *cert. denied*, 434 U.S. 1018 (1978).


However, unlike the situation in *Larson*, this is not a criminal proceeding, but a juvenile matter.  As Edward's counsel pointed out at the dispositional hearing, "[a] successful prosecution under the [Federal Juvenile Delinquency] Act results in a civil determination of status rather than a felony or misdemeanor conviction."  *United States v. Sealed Appellant*, 123 F.3d 232, 233 (5th Cir. 1997).  *Accord United States v. Brian N.*, 900 F.2d 218, 220 (10th Cir. 1990).  The Supreme Court has taken a slightly different approach, recognizing "[l]ittle, indeed, is to be gained by any attempt simplistically to call the juvenile court proceeding either civil or criminal," because while the proceeding "has not yet been held to be a criminal prosecution[] within the meaning and reach of the Sixth

Amendment," it is not "devoid of criminal aspects merely because it usually has been given the civil label." *McKeiver v. Pennsylvania*, 403 U.S. 528, 541 (1971) (quotation marks omitted). Precisely because of the unique nature of the juvenile court proceeding, the Supreme Court has specifically refused to hold "all rights constitutionally assured to an adult accused of crime also are to be enforced or made available to the juvenile in his delinquency proceeding." *Id*. at 533. "[T]he Due Process Clause has a role to play," *see In re Gault*, 387 U.S. 1, 13 (1967), in juvenile trial proceedings, and the standard we use to measure the extent of that role is one of fundamental fairness. *McKeiver*, 403 U.S. at 543. Bearing this in mind, we carefully examine Edward's two-part argument.

1. Written Statement

Edward first argues he had a right to present oral summation.[5] In support of his position, he cites several unrelated cases and attempts to tie them together. Edward first cites *Larson* for the proposition stated above: a criminal defendant has a right to be present for summations in a jury trial in order to provide assistance to counsel and exert psychological influence on the jury. *See Larson*, 911 F.2d at 396. He then cites *Herring v. New York*, 422 U.S. 853 (1975), where

_____

[5] Edward actually couches his argument in terms of a right to be present at closing arguments.

the Supreme Court held a criminal defendant cannot be completely denied the right to present a closing summation in the context of a bench trial. *Id*. at 863, 865. Finally, Edward points to a case from the Second Circuit that held the psychological impact a defendant has on the jury is equally applicable when the fact finder is the court itself. *See United States v. Canady*, 126 F.3d 352, 362 (2d Cir. 1997), *cert. denied*, 522 U.S. 1134 (1998). Therefore, Edward reasons, he had a constitutional right to offer an oral summation at trial.

Edward's reasoning is unavailing for several reasons. First, we do not accept the Second Circuit's reasoning in *Canady* as applied to juvenile proceedings. While the presence of the defendant during closing arguments may exert a psychological influence on a jury, we find the likelihood of such an impact on a district judge in a juvenile proceeding to be minimal. Second, *Herring* is distinguishable. The *Herring* Court confronted a situation where the trial court completely foreclosed the defendant from presenting a summation, and the Court's decision was grounded in the Sixth Amendment right to counsel, not the Due Process Clause right to be present. *Herring*, 422 U.S. at 856-57. We find nothing in *Herring* which requires the summations be presented orally to the

court.[6] *See United States v. Stenzel*, 49 F.3d 658, 662 n.2 (10th Cir.), *cert. denied*, 516 U.S. 840 (1995) (noting written summation might have precluded appeal on issue of whether district court had duty to inquire if counsel desired to make closing arguments). Proper adjudication of a case often demands careful reflection on the facts presented, and the application of those facts to the law. Written summations are a helpful tool for the trial court in accomplishing what can be a complicated task of sorting through evidence presented at trial. We would perform a disservice to the interests of fairness and justice if we completely precluded the use of written summations at the close of a criminal bench trial, and instead insisted on oral summations.[7] Third, even if we required oral summations in criminal bench trials, we would need to determine if such a

---

[6] The Court did say, in limiting its holding to the facts presented, "[n]othing said in this opinion is to be understood as implying the existence of a constitutional right to oral argument at any other stage of the trial or appellate process." *Herring*, 422 U.S. at 863 n.13.

[7] Edward argues oral summation is necessary because "he wanted to be present to hear the case argued and to object to any improper closing by the government." Oral argument is not necessary to accomplish these goals in the bench trial setting. Edward was present for the one-day trial and was fully aware of the government's arguments and theories. In addition, Edward's counsel received a copy of the prosecutor's written summation, so he could determine if the prosecutor made objectionable statements to the court. He made no objections in this case, nor did he point to any improper argument on appeal. Finally, the danger a trial court might be unfairly swayed by an improper argument is negligible. Judges understand closing arguments are not evidence, and are able to sort the wheat from the chaff as far as what is proper argument.

requirement was necessary in a juvenile trial proceeding. However, we do not need to make that determination here because Edward invited any perceived error.

As recounted earlier, at the close of trial Edward's counsel asked the trial court for the opportunity to present a closing argument and actually suggested the argument be in written form: "May we also file written closing arguments, Your Honor, ... I don't mind if you set a page limit, but I would like an opportunity to – ... either orally or written[], do a summation to the Court." Two weeks later, when the deadline for the written summations and post-trial motions arrived, Edward's counsel filed a request for oral summation instead.[8] However, at this point the trial court had mulled the case over for days. The government prepared its written summation and filed it with the trial court the same day Edward filed his request. The trial court was ready to review the summations and make its rulings. "The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error." *United States v. Johnson*, 183 F.3d 1175, 1178 n.2 (10th Cir. 1999). We

---

[8] In his request for oral summation, Edward's counsel stated he would submit a final written summation – a promise that went unfulfilled. We also note the trial court was fully aware of Edward's defense theory because the court heard arguments on Edward's motions for acquittal and directed verdict at the close of the government's case. In addition, Edward did file a written Motion for Judgment of Acquittal contemporaneously with his request for oral summation.

hold the district court was under no obligation to rearrange its schedule to accommodate Edward's belated motion, having already granted his original request for written argument.

### 2. Written Verdict

Whether Edward was entitled to be present at the trial court's rendering of the verdict is a more difficult question. Edward again cites *Larson* and *Canady* as supporting his position. In *Larson*, we held a criminal defendant has a due process right to be present for the rendition of a jury verdict, citing the same opportunity to assist counsel and influence the jury as mentioned in the closing argument context discussed above. *See Larson*, 911 F.2d at 395-96. The Second Circuit extended our logic one step further to require physical presence of a criminal defendant for the rendering of a verdict following a bench trial. *See Canady*, 126 F.3d at 361-62. Edward invites us to extend the logic further yet, and require the presence of juvenile defendants. We decline to do so.

In addition to our earlier-stated reluctance to adopt the Second Circuit's reasoning as applied to juvenile proceedings, we have a further reason for not extending *Canady*. The Second Circuit in *Canady* relied in part on the criminal defendant's right to an open "public trial" in holding the district court erred by

issuing its verdict in written form. *Id.* at 362-63. As support for its position, the panel stated "[t]here is a distinctly useful purpose in ensuring that the pronouncement of the defendant's guilt or innocence by the court is both face-to-face and public. It assures that the trial court is 'keenly alive to a sense of its responsibility and to the importance of its functions.'" *Id.* at 361 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)) (alterations omitted). *Waller* is a case devoted to the Sixth Amendment right to a "public trial." *Waller*, 467 U.S. at 43-44. In relying on *Walker*, Edward fails to appreciate the difference between a criminal trial and a juvenile proceeding.

We have not extended the "public trial" right to juvenile defendants. In *McKeiver*, the Supreme Court seemed to express disdain for the idea when it held the right to a jury trial did not apply to juvenile proceedings. The Court clearly insinuated the "public trial" right would be incompatible with the traditional nature of the juvenile proceeding when it stated: "[I]f the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial." *McKeiver*, 403 U.S. at 550. Indeed, in Edward's case, the district court meticulously guarded the privacy of the proceedings, presumably to protect Edward's interests. When deciding

-16-

whether due process requires application of certain constitutional rights to juvenile proceedings, the Supreme Court has focused on "fundamental fairness" with an emphasis on fact-finding procedures. *See McKeiver*, 403 U.S. at 543 (stating emphasis on fact-finding led to applying "[t]he requirements of notice, counsel, confrontation, cross-examination, and standard of proof" to the juvenile setting, but rejecting right to jury trial because "one cannot say that in our legal system the jury is a necessary component of accurate fact-finding"). Given our view of *Canady* and the Supreme Court's emphasis on applying those rights related to fact-finding to juvenile proceedings, we see no justification for adopting a constitutional rule requiring the presence of juvenile defendants for the rendering of the verdict at the close of a bench trial.

Again, however, we point out we would affirm the district court regardless of our determination of the constitutional question because any perceived error in not reading the verdict in open court was harmless. In so holding, we note all but a "limited class of fundamental constitutional errors" are subject to harmless error analysis. *Neder v. United States*, 527 U.S. 1, 7-8 (1999). That limited class includes a complete denial of counsel, biased trial judge, racial discrimination in selection of grand juries, denial of self-representation at trial, denial of public trial, and a defective reasonable doubt instruction. *See id.* at 8. These errors

affect "the framework within which the trial proceeds, rather than simply ... the trial process itself." *Id.* (quotation marks and citation omitted). Failing to announce the verdict in a juvenile court proceeding hardly rises to the level of the structural errors listed above because it does not necessarily render "the proceeding fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id*. at 9. In addition, we have previously applied harmless error analysis to the deprivation of a criminal defendant's right to be present at rendition of the verdict. *See Larson*, 911 F.2d at 396.

When we apply harmless error analysis, we require "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967), *quoted in Neder*, 527 U.S. at 15. We are confident the district court's verdict was not impacted by the fact it was issued in written form, and not read in open court in Edward's presence. First, the district court explicitly concluded "oral summation would not assist" him in his decision. Second, the district court carefully reviewed the testimony, made supportable credibility determinations, and found Edward guilty. The court's own conclusion and thorough analysis convinces us the verdict would not have changed with a theoretical change in method of delivery. Therefore, we find any perceived error

-18-

harmless.[9]

Having reviewed the issues raised on appeal, we doubt the sagacity of Edward's constitutional and Rule 43 arguments as outlined in our discussion. However, we dispose of these issues on alternative grounds because any potential errors were either invited or harmless. In addition, we hold the district court did not error by admitting the testimony of Dr. Hoffman under Fed. R. Evid. 803(4). Accordingly, we **AFFIRM**.

---

[9] Rule 43 is also subject to harmless error analysis. *See Rogers v. United States*, 422 U.S. 35, 40 (1975); *Santiago*, 977 F.2d at 521 n.5. Therefore, we affirm despite any possible violation of Rule 43 for the same reasons detailed above.