**F I L E D**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENET CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ITOBORE OSHOBE,

    Defendant - Appellant.

No.04-3088
(D.C. No.03-CR-10052-01-MLB)
(Dist. of Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

---

    Itobore Oshobe is a Nigerian citizen living in the United States. Beginning some time in 2002, he became involved in a scheme to receive various products delivered to his Pittsburg, Kansas home, which had been fraudulently ordered over the internet. Mr. Oshobe and his roommates would sign for packages delivered to their apartment at 1800 S. Pine St., Apt. #2 ("S.Pine"). Mr. Oshobe kept and used some of the items that were delivered to him, but says he re-packaged and shipped most of the items to an individual named Ade Taiwo in Nigeria.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Sometime after February 16, 2003, the United States Secret Service obtained a search warrant for the S. Pine apartment. They carried out a controlled delivery of fraudulently obtained merchandise and subsequently executed the search warrant. Mr. Oshobe and his roommates were eventually indicted, and Mr. Oshobe and one roommate were tried on a sixteen count indictment including charges of credit card fraud, mail fraud and transportation and receipt of stolen property. Mr. Oshobe was convicted while his roommate was acquitted. Mr. Oshobe now appeals both his convictions, and pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005), the enhancement of his sentence based on facts not found by a jury, admitted by Mr. Oshobe, or the fact of a prior conviction.

## I. BACKGROUND

In January 2002, Itobore Oshobe came to Pittsburg, Kansas, on a student visa to study electrical engineering at Pittsburg State University. Shortly thereafter, he moved into the S. Pine apartment. Otu Kadana lived there as well, and a third roommate, Andrew Ikepeme, moved in during January, 2003.

### A. Investigation and Prosecution of Mr. Oshobe

On February 26, 2003, Genesis Office Products received an internet order for the purchase of ink cartridges to be delivered to "Pete Teemoni" at the S. Pine address. Payment was to be via Master Card. However, the company discovered that the name "Pete Teemoni" did not match the credit card information provided. In fact, the credit card belonged to Gregory Hellyer, who did not authorize his credit card to be used for any

purchases at Genesis Office Products. Genesis contacted law enforcement, and eventually had a conversation with Special Agent Ron Emmot of the United States Secret Service, where Genesis agreed to make a controlled delivery to "Pete Teemoni" at the address provided by the purchaser.

After the conversation with Genesis Office Products, Agent Emmot determined that the Defendant-Appellant, Itobore Oshobe, lived at the S. Pine address. Agent Emmot further determined that Oshobe's co-defendant, Otu Kadana, and a third person, Andrew Ikpeme, were also residents at that address.[1] "Pete Teemoni" was not. Agent Emmot further learned that a large number of complaints had been filed with the Pittsburg, Kansas police department about deliveries of fraudulently obtained merchandise to the S. Pine address. Agent Emmot also confirmed with United Parcel Service ("UPS") that numerous packages had been delivered to S. Pine, addressed to several different names. Based on this information, Agent Emmot obtained a warrant authorizing the search of the S. Pine apartment, as well as the seizure of computer equipment and accessories, packages or mail addressed to eighteen different names, and evidence, fruits and instrumentalities of criminal activity. Agent Emmot made the controlled delivery to S. Pine, and a few minutes later executed the search warrant.

During the execution of the warrant, law enforcement officers seized extensive

---

[1] Mr. Kadane was acquitted at trial and is not a party to this appeal. Mr. Ikpeme was also initially charged, but his charges were dropped before trial. Mr. Ikpeme is likewise not a party to this appeal.

evidence. This included fifteen shipping boxes addressed to the defendant's address, each of which was packed with merchandise, and four additional boxes which contained no merchandise but from which the shipping label was seized. Documentary evidence was also seized, including several documents addressed to the S. Pine address, some of which were in Mr. Oshobe's name and some of which were addressed in the names of people who did not live in the apartment. These included a letter from QVC addressed to "Ade Teemon," which had been opened and which informed "Mr. Teemon" that his order could not be filled and that he needed to contact QVC. There was also a letter from Chase Bank addressed to Monimon Teemon soliciting him for a Chase credit card. Agent Emmot also discovered documents in the living room closet bearing the S. Pine address, but in various fictitious names.

Mr. Oshobe and Mr. Kadana were indicted on the following charges: Count One - Aiding the Unauthorized Use of an Access Device/Credit Card (18 U.S.C. 1029 (a)(2)); Count Two - Interstate Transportation of Stolen Property (18 U.S.C. 2314); Count Three - Receipt of Stolen Property (18 U.S.C. 2134); and Counts Four through Eight and Eleven through Fifteen[2] - Mail Fraud (18 U.S.C. 1341 and 2). At trial, six witnesses testified about a number of unauthorized transactions on their credit cards. The following items, which had been purchased using those credit cards, were found during the search of the apartment: Anne Kennedy-Rackham - Kingston RAM computer memory; Mark Ferguson

---

[2] Counts Nine and Ten were dismissed pursuant to the Government's motion. (ROA Vol. 1, DE. 73, 80).

- a laser printer from Computer Friend; John Krueger - CD Soother from Sharper Image; Pamela Gauthier - a Roomba robotic vacuum cleaner; Mike Lynn - necklace from Red Envelope; and Gregory Hellyer - the HP ink jet cartridges used in the controlled delivery. In addition, witnesses from various companies testified that they had shipped products to either the S. Pine apartment or another nearby address on S. Elm. Agent Emmot prepared and testified about a summary exhibit of the witness testimony, dates of purchase, shipping companies and values of each piece of merchandise. The Government estimated the total value of these purchases to be $1,351.18.

## B. Mr. Oshobe's Defense

Mr. Oshobe testified in his own defense. He stated that while living in Pittsburg, he became friends with a fellow Nigerian, a woman named Foonta Olawafeme. Mr. Oshobe would occasionally visit Ms. Olawafeme at her apartment at 1409 S. Elm Apt. A ("S. Elm"), which was about a three to five minute walk away from his S. Pine apartment. Mr. Oshobe testified that beginning in the summer of 2002, when he visited Ms. Olawafeme's apartment, he observed that she was receiving a number of packages from various stores and companies. He said that Ms. Olawafeme was receiving those packages and re-packaging and sending them to a family friend back in Nigeria named Ade Taiwo. Mr. Oshobe testified that on a few occasions he assisted Ms. Olawafeme in opening and repackaging the items. At some point, Mr. Oshobe said that he spoke to Mr. Taiwo himself. About that time, Ms. Olawafeme moved to New York. Mr. Oshobe stated that

at this point, he agreed to start receiving and re-sending packages to Mr. Taiwo. Mr. Oshobe claims that he did not receive any money for providing this service, but did receive a laptop computer as a gift of appreciation.

Mr. Oshobe claimed that at all times, he had been receiving the packages solely on behalf of Mr. Taiwo and his business partners. Mr. Oshobe stated that Mr. Taiwo owned a computer store in Nigeria. Mr. Oshobe further claimed that he believed the names of the addressees for the packages were the names of Mr. Taiwo's business partners. Mr. Oshobe testified that he only signed in his own name for materials received and that he subsequently shipped the materials to Mr. Taiwo in Nigeria.

Notwithstanding Mr. Oshobe's contention that he was merely receiving and re-shipping items, police found several items unpacked and scattered around the apartment, which appeared to have been used by him. Mr. Oshobe attempted to explain this as follows: First, in response to Agent Emmot's testimony that a box for a Panasonic camera had been found in the apartment but the camera itself was missing, Mr. Oshobe explained that he had taken it out of the box to examine it because he was intrigued by its functions. ROA Vol. 4 at 633. He claims it was on his desk when the search was done. Pastor Allan Parker confirmed that the camera was in Mr. Oshobe's belongings after he was arrested. ROA Vol. 5 at 796. Another item called into question was a CD ROM. Because Mr. Oshobe writes short computer programs as a hobby, he testified that he removed the CD from its box and installed the software on his computer to compare the

program to one that he was designing at the time. ROA Vol. 4 at 634. Mr. Oshobe testified he had since uninstalled it, but it was still out of the box when the S. Pine apartment was searched. Mr. Oshobe had also used some memory sticks which were delivered, to upgrade Mr. Kadana's computer. Mr. Oshobe testified that he did so only after obtaining permission from Mr. Taiwo. ROA Vol. 4 at 635. Finally, yet another piece of merchandise that authorities questioned was a laptop computer which Mr. Oshobe sold to a friend, Fred Njoroge. Mr. Oshobe testified that he had received the laptop as a token of appreciation from Mr. Taiwo, and subsequently sold it because it was an older model, not as good as his desktop computer, and he didn't really need it. ROA Vol. 4 at 632.

Mr. Oshobe maintains that no orders for any merchandise were placed from either Mr. Oshobe's or Mr. Kadana's computer. The parties stipulated at trial that based on information regarding IP addresses which was captured by various companies when the orders were made, the orders were placed using computers that were located in either Africa or Europe. ROA Vol. 2 p. 102.

Mr. Kadana also testified in his own defense. He explained that he had signed for packages because Mr. Oshobe told him they would be arriving. He stated that he had only signed his own name when accepting packages. His name was not always legible. One delivery addressed to Ben Teemon was accepted by T. Kella. Mr. Kadana recognized the signature as his own, but claimed he never held himself out to the delivery

driver as T. Kella. ROA Vol. 5 at 848.

Mr. Oshobe attempted to introduce further witness testimony in his defense from his third roommate Andrew Ikepeme, as well as Mr. Oshobe's girlfriend Rachel Born and the associate pastor of Mr. Oshobe's church, Edward Appiah. Mr. Oshobe wanted those witnesses to testify as to his statements to them that he was receiving and re-sending these packages to Nigeria on behalf of Mr. Taiwo, in an effort to assist Mr. Taiwo's business and without knowledge that the packages had been purchased fraudulently. All three witnesses' testimony on this subject was excluded as hearsay.

## C. The Convictions and Sentencing

Mr. Oshobe was convicted on all counts while Mr. Kadana was acquitted. Mr. Oshobe received a base level sentence of 6 under U.S.S.G. § 2B1.1(a), with a 2 level enhancement based on number of victims (between 10 and 50[3]) and a 2 level enhancement based on a substantial part of the fraudulent scheme being committed outside the United States.[4] The count 3 conviction of Mr. Oshobe required a minimum finding of a $5000 loss. The sentencing guidelines provide for a 2 level enhancement when the loss exceeds $5,000 but is less than or equal to $10,000.[5] Rather than applying that guideline provision, the District Court instead applied a 10 level enhancement, based

[3]*See* U.S.S.G. § 2B1.1(b)(2)(A)(I)

[4]*See* U.S.S.G. § 2B1.1(b)(9)(B)

[5]*See* U.S.S.G. §2B1.1(b)(1)(B)

on its determination of intended loss between \$120,000 and \$200,000.[6]  Since Mr. Oshobe had no criminal history, his guideline range for a level 20, Category I Offense was 33-41 months.  The court sentenced Mr. Oshobe to 41 months' imprisonment and restitution in the amount of \$31,361.37.

## II.  DISCUSSION

Mr. Oshobe now appeals both his convictions and his sentence. He argues first that he had no knowledge the merchandise he was receiving had been fraudulently obtained. He contends that the District Court committed reversible error by instructing jurors that they may, but were not required to, infer from a person's possession of stolen property that the person knew the property was stolen, because that instruction omitted the words "if not satisfactorily explained" in reference to the possession.  Mr. Oshobe further argues that the Government failed to present sufficient evidence that Mr. Oshobe participated in or had knowledge of the fraudulent manner in which the merchandise was obtained. Also, Mr. Oshobe contends the District Court abused its discretion by excluding as hearsay the witness testimony Mr. Oshobe sought to introduce regarding his alleged lack of knowledge that the merchandise he possessed was fraudulently obtained.

In addition to disputing the jury's finding with respect to his knowledge, Mr. Oshobe also argues that the jury was not presented sufficient evidence to support the first count of the indictment under which he was convicted - Aiding the Unauthorized Use of

---

[6]*See* U.S.S.G. § 2B1.1(b)(1)(F)

an Access Device/Credit Card. Mr. Oshobe argues that the Government failed to prove

the amount of the unauthorized use was in excess of $1,000, as is required under 18 U.S.C.

§ 1029 (a)(2). Mr. Oshobe further contends that the Government failed to show he aided

and abetted the unauthorized use of the cards.

Finally, as to his sentence, Mr. Oshobe argues that the District Court violated his

Sixth Amendment rights under *United States v. Booker*, 125 S.Ct. 738 (2005), by applying

a total of fourteen levels' enhancement to his sentence based on facts not found by a jury,

admitted by Mr. Oshobe, or the fact of a prior conviction. We disagree and affirm the

convictions and the sentence on all counts.

## A. *The challenged jury instruction*

Mr. Oshobe first objects to the District Court's Jury Instruction number 21

("Instruction 21"). The challenged instruction reads in full as follows:

> Possession of property recently obtained by fraud is a circumstance from which a jury may, but is not required to, infer that the person in possession of it knew that the property was fraudulently obtained.
>
> The term "recently" is a relative one and has no fixed meaning. Whether property may be considered "recently obtained by fraud" depends upon the nature of the property and all of the other evidence received in the case.
>
> I specifically caution you that you may not draw the inference of knowledge from possession of property recently obtained by fraud as to a particular defendant unless you are satisfied that the government has proved beyond a reasonable doubt that a particular defendant possessed a particular item of property that was recently obtained by fraud. In other words, you may not draw the inference as to one defendant based on the other defendant's possession of the property, nor may you draw the inference based merely on evidence the property was located in their jointly-occupied apartment. Finally, should you

- 10 -

choose to draw the inference, you may do so only as to Counts 2 and 3, which contain an element of knowledge of the property. You may not draw the inference as to counts 1, 4 through 8, and 11 through 15.

I remind you that the government has the burden to prove the charges beyond a reasonable doubt as to each defendant. The burden never shifts to the defendant to prove his innocence.

ROA Vol. 1 DE 81.

Mr. Oshobe raises several challenges to this instruction. First, Mr. Oshobe contends the judge should have modified this instruction by adding a provision that the jury's permissive inference of knowledge from Mr. Oshobe's possession of the material alleged to have been recently obtained by fraud was only appropriate "*if his possession of the material was not satisfactorily explained.*"(emphasis added).[7] He further argues that the District Court erroneously removed language from the instruction which would prevent the inference if there was evidence consistent with innocence. Finally, Mr. Oshobe argues the District Court erroneously removed an explanation from the instruction as to the

---

[7] The Government argues that Mr. Oshobe's counsel invited the error. *See United States v. Edward J.*, 224 F.3d 1216, 1222 (10th Cir. 2000) (holding invited error doctrine "prevents party from inducing action by a court and later seeking reversal on the ground that the requested action was error.") During the initial instruction conference the Government asked the court to give its requested inference instruction, including the phrase "if not satisfactorily explained." ROA Vol. V, DE 100, at 714. Mr. Oshobe's counsel objected on the basis that the instruction was "getting dangerously close to switching the burden of proof[.]" *Id*. at 715. The Court responded to say the objection would be cured by deleting the phrase "if not satisfactorily explained." *Id*. Mr. Oshobe's counsel argued this deletion would not cure the objection. *Id*. at 716. She renewed her objection to the instruction as a whole during the initial instruction conference (*Id*. at 717) and again after the court later announced its intention to give the instruction (*Id*. at 820). We find that Mr. Oshobe's counsel did not invite the error because she continued to object to the instruction as a whole.

- 11 -

importance of recency to drawing such an inference. Mr. Oshobe contends that his lack of knowledge that the materials in question had been obtained by fraud was the crux of his defense, and as a result, this allegedly erroneous instruction tainted the instructions as a whole, unduly balancing them in favor of the prosecution and requiring us to reverse the convictions on all counts.

Mr. Oshobe raises these specific contentions for the first time on appeal. At trial, his counsel raised a general objection to Instruction 21, arguing that it shifted the burden of proof. ROA Vol. V, DE 100, at 715. She also later argued that the instruction failed to define terms such as "infer" and "fraud," (*id.* at 823-26), and joined in an objection to the instruction as a whole, made by co-defendant Mr. Kadana's counsel, contending the instruction unduly focused on possession rather than other factors from which the jury could infer knowledge, *Id.* at 820-23, 826. The Federal Rules of Criminal Procedure provide that "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the *specific objection and the grounds for the objection* before the jury retires to deliberate." Fed. R. Crim. P. 30(d) (emphasis added). A generalized objection to an instruction is insufficient to preserve a specific objection on appeal. *United States v. Bornfield*, 184 F.3d 1144, 1146 n. 2 (10th Cir. 1999).

We review the District Court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law. *United States v. Cerrato-Reyes*,

176 F.3d 1253, 1262 (10th Cir.1999) (citation omitted). To the extent that Mr. Oshobe's specific challenges to the language of Instruction 21 have been raised for the first time on appeal, however, we will conduct only a limited review of those issues for plain error. *See Jones v. United States*, 527 U.S. 373, 388 (1999).

The jury instruction at issue here resembles an instruction approved by the Supreme Court in *Barnes v. United States*, 412 U.S. 837, 840-41 (1973). In *Barnes*, the defendant challenged an instruction which stated in relevant part: "[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in this case, that the person in possession knew the property had been stolen." *Id*. The *Barnes* instruction further stated: "the term 'recently' is a relative term and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property, and all the facts and circumstances shown by the evidence in this case." *Id*. The *Barnes* Court then examined the extensive common law history of the inference of guilty knowledge from unexplained possession of stolen goods before satisfying itself that the instruction was constitutionally permissible. *Id*. at 843-44. The Court noted that the "practical effect" of this instruction was to "shift the burden of going forward with evidence to the defendant[,]" but concluded that where an inference satisfies the reasonable doubt standard, as was the case in *Barnes*, the shift was permissible because there was a "rational connection" between the facts proved and the

fact presumed or inferred. *Id.* at n. 11; *See also Tot v. United States*, 319 U.S. 463, 467-68 (1943).

Unlike in *Barnes*, the instruction at issue here, Instruction 21, does not contain the qualifying words "if not satisfactorily explained" with reference to the property allegedly obtained by fraud. Instruction 21 also omits the adjective "ordinarily" which qualifies the description of circumstances under which an inference can be drawn. The District Court here added a provision emphasizing that while the jury "may" draw the inference, it "is not required to[.]" We hold that it was not an abuse of discretion for the District Court here to give a permissive inference instruction quite similar to one that was expressly approved by the Supreme Court. We further conclude that the only substantial difference between Instruction 21 and the instruction approved by the Court in *Barnes,* which requires our further examination, is the omission of the phrase "if not satisfactorily explained."

Since Mr. Oshobe did not specifically object below to the District Court's modification of the instruction to delete the "satisfactorily explained" language (*see* our discussion *supra* at n. 7), as noted above we will review this issue only for plain error. To merit  reversal under plain error review, there must be (1) "error" that is (2) "plain" and that (3) "affect[s] substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993). If these conditions are met, "the decision to correct the forfeited error [is] within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial

- 14 -

proceedings.'" *Id*. We find that Mr. Oshobe has not met this exacting standard.

Mr. Oshobe argues that the "satisfactorily explained" phrase was critical to the validity of the instruction. He notes that the court in *Barnes* emphasized that the defendant had "provided no plausible explanation for [his possession of stolen goods] consistent with innocence." 412 U.S. at 845. In this case, it is true that Mr. Oshobe offered an explanation that he was merely receiving, repackaging and forwarding materials to Mr. Taiwo in Nigeria, and that he did not believe the materials he was handling had been fraudulently obtained because he thought the various names on the packages were names of Mr. Taiwo's business partners. Mr. Oshobe therefore argues that the District Court's omission of the phrase "if not satisfactorily explained" prevented the jury from properly considering his explanation before drawing the inference that he knew the material he possessed had been fraudulently obtained.

We disagree. The fact that Mr. Oshobe has offered an explanation does not mean the jury had to believe it. *See Barnes*, 412 U.S. *supra* at 846 n. 9 ("The jury is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference."). Even without the "satisfactorily explained" language included in the challenged instruction, we still review the instructions as a whole to evaluate whether the jury was misled. *See United States v. Pappert*, 112 F.3d 1073, 1076 (10th Cir. 1997). "Only where the reviewing court has 'substantial doubt that the jury was fairly guided' will the judgment be disturbed." *Id*. (citation omitted).

In this case, the challenged Instruction 21 made it clear to the jurors that they were not required to draw the inference of guilty knowledge. Further, in the instruction immediately prior, the jury was expressly instructed that "the process of drawing inferences is not a matter of guesswork or speculation. In order to return a verdict of guilty, you still must be satisfied that the Government has proved the defendant's guilt beyond a reasonable doubt on all of the elements of the offense." Jury Instruction 20, ROA Vol. I, DE 81. Mr. Oshobe offered his explanation for possessing the fraudulently obtained materials principally through his own testimony. The instruction immediately following Instruction 21 advised the jury they were to determine Mr. Oshobe's credibility "in the same way as you would consider the testimony of any other witnesses who took the stand." Jury Instruction 22, *Id*. The jury was also specifically instructed that good faith was a defense to counts 4 through 8 and 11 through 15 (Jury Instruction 23, *Id*.), and that Mr. Oshobe had introduced evidence of good character which, while not a defense, may be sufficient to generate reasonable doubt (Jury Instruction 24, *Id*.). Finally, the jury was instructed in the penultimate paragraph of the challenged Instruction 21 that the relevant inference of guilty knowledge was only available as to counts 2 and 3 of the indictment. Nonetheless, the jury convicted Mr. Oshobe on ***all thirteen counts***.

In light of the instructions as a whole, reviewed above, it seems clear the jury simply did not believe Mr. Oshobe's explanation for his conduct, concluding to the contrary that Mr. Oshobe knew he was participating in an act of fraud. For this reason, we

find that even assuming arguendo that Mr. Oshobe could meet the first two prongs of plain error analysis, he has failed to show that the impact of the District Court's alleged error affected his substantial rights. As the Court noted in *Olano*, in most cases the determination that an error has affected substantial rights "means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." 507 U.S. *supra* at 734. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* We do not find that the instructions as a whole raise "substantial doubt that the jury was fairly guided." *Pappert*, *supra*. Mr. Oshobe has therefore failed to meet his burden under *Olano* because he has failed to show a reasonable probability of a different outcome had the District Court included the phrase "if not satisfactorily explained" in its Instruction 21.

**B. Sufficiency of the evidence with respect to Mr. Oshobe's knowledge of or participation in the fraud**

Mr. Oshobe's contentions in this regard are principally with respect to his conviction on counts 4 through 8 and 11 through 15 of the indictment, which are charges of mail fraud under 18 U.S.C. §1341 and § 1342. The elements of mail fraud require the Government to prove (1) the devising of a scheme or artifice either to defraud or for obtaining money by means of false or fraudulent pretenses, representations or promises; (2) the specific intent to defraud; and (3) use of the United States mails or a commercial carrier to execute the scheme. *United States v. Kennedy*, 64 F.3d 1465, 1475 (10th Cir.

- 17 -

1995); 18 U.S.C. § 1341. Mr. Oshobe argues that the Government failed to present sufficient evidence to support the charge that he knew of or participated in the fraud, and therefore the Government failed to prove the element of specific intent to defraud.

The standard of review for sufficiency of evidence to support a conviction requires us to review the record de novo and then, after reviewing both the direct and circumstantial evidence, and the inferences from that evidence, in the light most favorable to the Government, determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Lazcano-Villalobos*, 175 F. 3d 838, 843 (10th Cir. 1999). The Government argues that at the close of its case, Mr. Oshobe did not specifically raise the sufficiency of evidence relating to his knowing participation in the scheme. ROA Vol. IV, DE 99 at 510-511. However, Mr. Oshobe's counsel orally made a motion for judgment of acquittal under Fed. R. Crim. P. 29. The Court treated it as a sufficiency of the evidence argument. ROA Vol. IV, pg. 510. Making a Rule 29 motion for judgment of acquittal preserves the sufficiency of the evidence issue. *United States v. Williamson*, 53 F.3d 1500, 1514 (10th Cir. 1995).

The Government charged Mr. Oshobe as both a principal and an aider and abettor, although it proceeded against him primarily as an aider and abettor. Mr. Oshobe argues that to convict a defendant under an aiding and abetting theory, the evidence must establish that a defendant associated himself with a criminal venture; participated in the venture as something he wished to bring about; and sought by his actions to make the

- 18 -

venture succeed.  *United States v. Hanson*, 41 F.3d 580, 582 (10ᵗʰ Cir. 1994).

Mr. Oshobe's defense was that he did not know the items he was receiving had been obtained through fraud, and therefore he could not have formulated the necessary intent to have aided and abetted the fraud.  According to Mr. Oshobe, the Government's case against him was based only on the circumstantial evidence that he was receiving packages under a number of different names, and that he had removed some of the items from their packages and used them.  A jury may draw a reasonable inference of knowledge from circumstantial evidence where there exists a "probability that the conclusion flows from proven facts" and an inference is unreasonable where a jury engages "in a degree of speculation and conjecture that renders its findings a guess or mere probability." *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10ᵗʰ Cir. 2000).  Mr. Oshobe argues that in light of the explanation he provided for his conduct, the jury verdict against him could only be based on such impermissible "speculation and conjecture."

We disagree.  Mr. Oshobe claims that he did not realize the material that he was receiving had been obtained through fraudulent means.  However, there was considerable evidence presented which cast doubt on this assertion.  Mr. Oshobe was receiving packages under a long list of fraudulent names.[8]  Not only did Mr. Oshobe receive the

---

[8]Those names included:  Raymon Tee, Monimon Teemon, Joe Teemon, Ramon Teemon, Monimon Mon, Ramoni Monimon, Rays Teemon, Temmeoni Rayus, Temmeoni Raymoni, Yaya Teemon, Ben Teemon, Stanley Teemon, Stefan Monimon, Teenana Stepmon (Supp. Vol. III, Ex. 207a and 207); Pete Teemoni (Supp. Vol. III, Ex. 7-1, 8-1, 12-1, 15-1); Ogboye Jones (Supp. Vol. III Ex. 11-1); Teemoni Peter (Supp. Vol. III, Ex. 13-1, 14-1); Raph Teemoon Akin (Supp. Vol. III, Ex. 3-140); Joe Minimon, Teemon Mons, Moni (Supp. Vol. III, Ex. 3-145); Teemon

merchandise delivered to these fictitious individuals, but he opened many of the packages and had the material scattered throughout the apartment. Mr. Oshobe also received and opened mail addressed to some of the fictitious individuals, including a notice from QVC that QVC had been unsuccessful in reaching Ade Teemon by phone but that his QVC account had been frozen, as well as a credit card solicitation to Monimon Teemon. Supp. Vol III, Ex. 200. Further, when a package was sent from the S. Elm address, to be delivered to Mr. Oshobe's Nigerian contact, it was returned to the S. Pine address instead; rather than forward the package or return it to S. Elm, Mr. Oshobe opened the package and removed some of its contents. ROA Vol. II, DE 97 at 96-99. Taken together, this was sufficient evidence for the jury to conclude Mr. Oshobe had knowledge of the fraud and formed the specific intent to participate in it.

## C. Exclusion of Mr. Oshobe's Witnesses' testimony

We review the District Court's evidentiary rulings on hearsay evidence for abuse of discretion, considering the record as a whole. *United States v. Becker*, 230 F. 3d 1224, 1228 (10th Cir. 2000). An abuse of discretion occurs when a judicial determination is arbitrary, capricious or whimsical and a trial court's discretionary judgment will not be overturned if it falls within the "bounds of permissible choice in the circumstances." *United States v. Shumway*, 112 F.3d 1413, 1419 (10th Cir. 1997), quoting *United States v.*

---

Peter (Supp. Vol. III, Ex. 3-144); Ade Teemon (Supp. Vol. III, Ex. 3-145); Golly Temane (Supp. Vol. III, Ex. 3-151); PT Computers, Peter Teemoni (Supp. Vol. III, Ex. 3-154); and Peter Teemoni (Supp. Vol. III, Ex. 3-147).

*Dorrough*, 84 F.3d 1309, 1311 (10th Cir. 1996). Further, "on hearsay issues, [this court] accords heightened deference to the District Court "because the determination of whether certain evidence is hearsay rests heavily upon the facts of the particular case." *Becker*, 230 F.3d at 1228.

Mr. Oshobe argues that the testimony he sought to introduce from Ms. Born, Mr. Ikepeme and Mr. Appiah was not hearsay because it was not offered for its truth value, but rather, as "context or background." *See e.g. United States v. Wilson*, 107 F.3d 774, 781 (10th Cir. 1997); *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987). Mr. Oshobe argues that the testimony was intended to show the relationship he had established with Ms. Olawafeme at the Elm apartment. He claims he would explain why he helped Ms. Olawafeme repackage boxes at the Elm apartment and then later, agree to help Mr. Taiwo by shipping merchandise to him in Nigeria. He further claims that the testimony by the other witnesses would support the fact that they saw Mr. Oshobe do exactly what he said he was doing, shipping packages to Mr. Taiwo. Their confirmation of this with him settled in their minds that he was doing nothing wrong. Mr. Oshobe's own belief that he was doing nothing wrong was the crux of the defense theory.

We do not believe the District Court committed reversible error when it refused to allow the above witnesses to testify as Mr. Oshobe wished. Mr. Oshobe was permitted to testify himself as to his defense theory of the case: that he believed he was helping out Mr. Taiwo in Nigeria, and did not know that the merchandise he was receiving had been

fraudulently obtained. Further, the witnesses Mr. Oshobe sought to call were in fact permitted to testify as to those things that they themselves had seen. The only topics they were prevented from testifying about were things that they had been told by Mr. Oshobe or some other out-of-court declarant. Ms. Born was permitted to testify, for example, that she had spoken on the telephone with someone who identified himself as Mr. Taiwo, that he asked for someone else and she gave that person the phone, and that Mr. Taiwo had left a voice mail message on another occasion. The Government objected and no evidence was introduced regarding the substance of the voice mail message.

In addition, although Mr. Oshobe contends that the testimony he was precluded from introducing was merely "background information," it is clear that the testimony which Mr. Oshobe sought to elicit went to the essence of his theory of defense. *United States v. Becker*, 230 F.3d 1224, 1229 (10th Cir. 2000), states that the background exception to the hearsay rule is inapplicable when the hearsay response goes to the essence of the prosecution or defense. In *Becker*, we held that testimony which "directly implicates the issue of guilt," upon which the "Government clearly relied" for its truthfulness, was therefore used for more than the "limited" background purposes allowed in *Freeman*, *supra*, and it was an abuse of discretion for the District Court to admit such statements. In this case, the District Court did not exceed the "bounds of permissible choice" by preventing Mr. Oshobe from introducing similar testimony in his defense because such testimony would have clearly gone to the essence of Mr. Oshobe's defense,

rendering the context or background exception to the hearsay rule inapplicable.

***D. Sufficiency of the evidence to support conviction for unauthorized use of credit cards in excess of $1,000***

As indicated above, the standard of review for sufficiency of evidence to support a conviction requires us to review the record de novo and then, after reviewing both the direct and circumstantial evidence, and the inferences from that evidence, in the light most favorable to the Government, to determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Lazcano-Villalobos*, 175 F. 3d *supra* at 843.

Mr. Oshobe's Rule 29 motion for judgment of acquittal preserved the sufficiency of the evidence issue. *Williamson*, 53 F.3d at 1514 (10th Cir. 1995). However, we find that the Government did introduce sufficient evidence for the jury to find unauthorized use of credit cards for purchases amounting to in excess of $1000. The Government's evidence was based on the testimony of six individuals regarding the unauthorized use of their credit cards. Of those six, the following items, ordered by use of the credit cards of five persons, were found in the S. Pine apartment: 1) A CD Soother ordered from Sharper Image using John Krueger's credit card; 2) a Roomba Vacuum valued at $200 ordered from Brookstone using Pam Gauthier's credit card; 3) a printer valued at $69 ordered from Computer Friend using Mark Ferguson's credit card; 4) a horseshoe necklace valued at $400 ordered from Red Envelope using Mike Lynn's credit card and 5) ink cartridges valued at $461.86 and attempted to be purchased from Genesis Office Products using Greg

Hellyer's credit card.

Mr. Oshobe contends that a value for the CD Soother was never established, and the value for the ink cartridges should not be considered towards the total value since Genesis became suspicious of the order immediately, never charged Hellyer's credit card, and the item was eventually delivered only as part of the controlled delivery in conjunction with executing the search warrant. Mr. Oshobe further contends that there was no evidence he aided and abetted the fraud because it was stipulated that the fraudulent orders were placed on computers in Africa and Europe. He argues that the credit card information had already been provided to the merchant and the merchandise shipped, meaning that the crime had already been committed before Mr. Oshobe entered the scene.

Contrary to Mr. Oshobe's contentions, however, the value of the CD Soother was introduced in the summary exhibit prepared by Agent Emmot, an exhibit to which Mr. Oshobe did not object. ROA Vol. III, DE 98 at 374 and 375. The value of the Soother was shown in this exhibit to be $263.14. Further, Mr. Oshobe's contention that the value of the ink cartridges should be excluded from the calculation of total value is not supported by the statute or any case law. 18 U.S.C. 1029 (a)(2) provides one who "uses one or more unauthorized devices during any one year period" and by the use of such devices (credit cards) "obtains anything of value aggregating $1,000" has violated the statute. Regardless of whether the credit card was actually charged, it was "used" when the person who ordered the ink cartridges gave the credit card number in placing the order

for the ink cartridges, and Mr. Oshobe "obtained" the cartridges when they were delivered to him before the execution of the warrant.  Likewise, Mr. Oshobe has no basis for his contention that the "aiding and abetting" of the offense was "completed" at the time the products were fraudulently ordered by some alleged third party.  The criminal transaction continued until the time those cartridges were delivered to Mr. Oshobe. The total value of the items seized from Mr. Oshobe's apartment, including the CD Soother and the ink cartridges, exceeded $1,000 and was sufficient to support the jury's conviction.

### E.  *The Constitutionality of Mr. Oshobe's sentence*

In *United States v. Booker*, the Supreme Court held that the Sixth Amendment requires "[a]ny fact (other than a prior conviction) ... necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict [to] be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S.Ct. 738, 756 (2005).  To remedy a constitutional infirmity created by applying judge-found facts to mandatory sentencing guidelines, the Court severed the provision of the Sentencing Reform Act making application of the Guidelines mandatory. *Id*. (excising 18 U.S.C. § 3553(b)(1)). When a defendant raises the constitutionality of his sentence for the first time on appeal, the standard of review is that of plain error.  *Id* at 769.

Mr. Oshobe argues that he preserved his objection to one of the three sentencing enhancements - a two level increase for a substantial part of the scheme being committed outside the United States.  ROA Vol. XII.  However, Mr. Oshobe did not object to this

enhancement on the ground that it violated his Sixth Amendment rights; rather, he disputed the factual basis for the imposition enhancement. ROA Vol. VI, DE 101 at 2. Further, contrary to Mr. Oshobe's objection, this enhancement was in fact supported by facts which he had previously admitted. Mr. Oshobe stipulated at trial that the computers used to defraud the victims were located in Europe and Africa. Supp. Vol. III, Stipulation. Mr. Oshobe also admitted in his testimony that he was shipping the merchandise he received to Nigeria. We find that Mr. Oshobe's admissions as to the use of computers in fraudulently obtaining the merchandise in question, and as to the ultimate delivery of the merchandise to Nigeria, supported the District Court's use of the enhancement.

Mr. Oshobe did not object to the other two sentencing enhancements - a two level increase based on the number of victims being between 10 and 50 and a ten level enhancement for specific offense increase based on intended loss between $120,000 and $200,000. Notwithstanding his failure to object below, Mr Oshobe contends on appeal that based solely on the jury verdict, the two level enhancement for more than 10 victims should not have been applied at all, and instead of the ten level enhancement for intended loss between $120,000 and $200,000, only a two level enhancement should have been applied for an actual loss between $5,000 and $10,000. We disagree. Even allowing that Mr. Oshobe's failure to object to these enhancements did not amount to an admission (*see United States v. Bass*, No. 04-6049 at n. 7), and allowing that before applying these enhancements, the District Court made factual determinations which went beyond those

facts found by the jury and were not the fact of a prior conviction, and assuming arguendo that Mr. Oshobe could meet the first three steps of plain error analysis with respect to these enhancements, we find that nevertheless this is not a case where the alleged error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." We therefore decline to exercise our discretion to notice any such error. *See Olano*, 507 U.S. *supra* at 735-37 ("a plain error affecting substantial rights does not, without more, satisfy the [test for reversal], for otherwise the discretion afforded by Rule 52(b) would be illusory.")

As we noted in *United States v. Mozee*, 405 F.3d 1082, 1091 (2005), constitutional *Booker* error is "unique" because the remedy for such an error is not a direct cure; rather, it is a remand for resentencing under a discretionary guidelines regime. Thus, "the question before us is whether a reversal and remand for resentencing by the District Court under a discretionary guidelines regime would advance the fairness, integrity, or public reputation of the courts." *Id.*

In this case, after the District Court determined that the applicable guideline range for Mr. Oshobe's offense was 33-41 months, it sentenced Mr. Oshobe to 41 months' imprisonment. In other words, the court exercised its discretion and in doing so sentenced Mr. Oshobe to serve the maximum term of imprisonment it could lawfully impose. "Because the court decided to maximize punishment rather than exercise leniency where it had discretion, there is no basis for us to assume Mr. Mozee would receive a lesser

sentence if he were resentenced under a discretionary sentencing regime in which the District Court is required to 'consider' the guidelines when it exercises its discretion." *Mozee*, 405 F.3d at 1092. Under these circumstances, Mr. Oshobe has failed to persuade us that the alleged Sixth Amendment error here would seriously affect the fairness, integrity, or public reputation of judicial proceedings. We therefore decline to exercise our discretion to correct the forfeited error.

### III. Conclusion

For the reasons discussed above, we therefore conclude that the District Court did not commit plain error when it removed the words "if not satisfactorily explained," from its Instruction 21, which permitted the jury to infer from Mr. Oshobe's possession of fraudulently obtained merchandise, that Mr Oshobe knew the merchandise was fraudulently obtained. Inter alia, the judge instructed the jury that the inference was only applicable to Counts 2 and 3 of the indictment, yet the jury found Mr. Oshobe guilty on all thirteen counts.

Further, we find that the Government presented sufficient evidence that Mr. Oshobe participated in or had knowledge of the fraudulent manner in which the merchandise was obtained. We hold that the District Court did not abuse its discretion when it excluded as hearsay the witness testimony Mr. Oshobe sought to introduce regarding his alleged lack of knowledge. We find that the Government presented sufficient evidence for the jury to convict Mr. Oshobe on the first count of his indictment - Aiding the Unauthorized Use of

- 28 -

an Access Device/Credit Card. Finally, we conclude that the District Court did not commit plain error when it applied a total of fourteen levels' enhancement to Mr Oshobe's sentence based in part on facts not found by a jury, admitted by Mr. Oshobe, or the fact of a prior conviction, where the court then sentenced Mr. Oshobe to a total 41 months' imprisonment, the top of the applicable guideline range it found. Accordingly, the convictions and the sentence of Defendant Mr. Oshobe are **AFFIRMED.**

ENTERED FOR THE COURT

William J. Holloway, Jr.
Circuit Judge